UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIE MORRIS,

                                Plaintiff,

                                                        5:16-CV-00601
v.
                                                        (NAM/TWD)
JASON MARTIN, et al.,

                                Defendants.
_____

APPEARANCES:

WILLIE MORRIS
14-A-0894
Plaintiff, pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        The Clerk has sent to the Court for initial review the complaint in this 42 U.S.C. § 1983

civil rights action brought by Plaintiff Willie Morris against Defendants Jason Martin, Police

Officer; Jason Seward, Police Officer; David Soares, District Attorney; Steve Korkoff, Chief of

Police; City of Albany; and Albany County.  (Dkt. No. 1.)  Also before the Court is Plaintiff's

application for leave to proceed *in forma pauperis* ("IFP Application").  (Dkt. No. 2.)

## I.    PLAINTIFF'S IFP APPLICATION

        A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  After reviewing Plaintiff's IFP

Application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.  The Court further

finds that Plaintiff has filed the required Inmate Authorization Form. (Dkt. No. 3.) Therefore, Plaintiff's IFP Application (Dkt. No. 2) is granted.

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted).  A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.   COMPLAINT

On or about August 4, 2012, Albany Police Officer Milton Johnson ("Johnson")  received

a call falsely claiming that Plaintiff had been in the vicinity of the Port Tavern Bar brandishing a loaded firearm, and that he had left in a gold color Nissan. (Dkt. Nos. 1 at ¶ 12 and 1-1 at 3.[1]) Defendant Albany Police Officers Jason Martin ("Martin") and Jason Seward ("Seward") allegedly pursued Plaintiff but did not bring him in for questioning or charge him in connection with the information received by Johnson. (Dkt. No. 1 at ¶ 13.)

Subsequently, at approximately 2:07am on August 9, 2012, Plaintiff was the subject of what he describes as a "not-so-routine" traffic stop by Defendant Martin. *Id*. at ¶ 14. Out of fear for his life, Plaintiff fled from the unwarranted traffic stop and ultimately crashed his automobile. *Id*. Plaintiff alleges in his complaint that Defendants Martin and Seward "planted and conspired in tampering with drug proceeds evidence near [his] crashed vehicle." *Id*. at ¶ 15. According to Plaintiff, Defendants Martin and Seward "acted in furtherance of planting the false evidence by falsifying business records and [f]iling false charges against [him] causing him to be unlawfully confined." *Id*.

A felony complaint annexed as an exhibit to Plaintiff's Complaint charged Plaintiff with criminal possession of a controlled substance in the third degree, N.Y. Penal Law § 220.16-12, a Class B felony, on August 9, 2012. (Dkt. No. 1-1 at 5.) The felony complaint, on which Defendant Martin appears to have been the complainant, states that:

> ON 08/09/2012 AT 0217 HRS WHILE AT 79 LEXINGTON AVE
> THE DEFENDANT DID KNOWINGLY AND UNLAWFULLY
> HAVE IN HIS POSSESSION AND UNDER HIS CONTROL,
> WHICH HE THREW TO THE GROUND, (2) PLASTIC BAGS
> CONTAINING CRACK COCAINE, ONE BAG CONTAINED 6
> INDIVIDUAL PIECES OF CRACK COCAINE AND THE

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

SECOND CONTAINED 37 INDIVIDUAL PIECES OF CF
CRACK COCAINE WITH AN AGGREGATE WEIGHT OF 16.5
GRAMS, SAID CRACK COCAINE WAS FIELD TESTED
POSITIVE AND WEIGHED BY PO SEWARD.

(Dkt. No. 1-1 at 5.)

Plaintiff was arrested on the charge and released on bond approximately two weeks later.

(Dkt. No. 1 at ¶ 16.)  On January 6, 2013, Plaintiff was targeted by non-defendant Albany Police

Officers Johnson and Michael Fargione and coincidentally was charged on weapons possession

stemming from the August 9, 2012, incident.  *Id.*

On July 31, 2013, Plaintiff sent a formal complaint regarding the August 9, 2012, traffic

stop and the alleged planting of drugs and filing of false charges by Defendants Martin to, *inter*

*alia*, Korkoff and Soares.  (Dkt. No. 1-1 at 11-15.)  Plaintiff was subsequently found not guilty

on the drug possession charge in a jury trial that ended October 5, 2013.  *Id.* at ¶ 17.  On

December 16, 2013, the Albany Supreme Court allegedly found in favor of Plaintiff on a

Criminal Procedure Law ("CPL") § 330.30 motion "due to the evidence being insufficient, a

position holding that the August 9th 2012 'Stop and Frisk' of plaintiff's arrest, lacked probable

cause violating plaintiff's rights pursuant to the New York State Constitution, Article I, §§ 5, 6

and 11."[2]  *Id.* at ¶ 18.

_____

[2]  CPL § 330.30 deals with motions to set aside a guilty verdict prior to the imposition of
sentence.  The relationship, if any, between the possession of a controlled substance in the third
degree charge and Plaintiff's CPL § 330.30 motion is unclear from the complaint.  If, as Plaintiff
has alleged, he was acquitted on the possession of a controlled substance charge on October 5,
2013, there would appear to be no need for a motion to set aside the verdict following the
acquittal.  It is unclear from the complaint whether the CPL § 330.30 motion involved another
charge or charges on which Plaintiff had been found guilty.  It is also unclear whether any of the
claims in this lawsuit relate to the weapons possession conviction for which Plaintiff is presently
incarcerated.

## IV.    ANALYSIS

### A.    *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that

> in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order,
> declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's issuance
> of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence that has *not*
> been so invalidated is not cognizant under § 1983. (emphasis in
> original).

According to the docket maintained by the Clerk's Office, Plaintiff is presently confined in Auburn Correctional Facility.  The Department of Corrections and Community Supervision online inmate lookup indicates that Plaintiff was incarcerated on March 6, 2014, on a criminal weapons possession conviction.[3]  Plaintiff has alleged in his complaint that on January 6, 2013, he was arrested on a weapons possession charge stemming from the August 9, 2012, incident. (Dkt. No. 1 at ¶ 16.)   Because the relationship, if any, between the January 6, 2013, arrest, the claims asserted in this lawsuit, and Plaintiff's present incarceration is unclear, the Court finds that any determination as to the applicability of *Heck* is premature and has undertaken its initial review of the sufficiency of Plaintiff's claims without regard to *Heck*.

---

[3] *See* http://nysdocssslookup.doccs.ny.gov/GCA00P00/W1Q1/WINQ000 (last visited on June 16, 2016).

**B.    City of Albany and Albany County**

      1.    <u>Plaintiff's Claims</u>

Plaintiff has alleged in conclusory fashion that the City of Albany and Albany County exercised deliberate indifference to his false arrest[4] by: (1) "enforcing a blanket policy created by the prosecutor to allow the Albany Police to conduct stop-frisks, and file perjured arrest reports without conducting a thorough investigation to determine whether the actions taken by their arresting agents were lawful" resulting in Plaintiff being frisked unlawfully and arrested on false charges by the Defendants (Dkt. No. 1 at ¶ 26); and (2) failing to adequately train police officers employed by them, specifically Martin and Seward "to the significance of the oath of duty not to commit perjury or plant evidence on a crime scene." *Id*. at ¶ 35.

      2.    <u>Scope of Municipal Liability under § 1983</u>

In *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978), the Supreme Court found that "the language of [section] 1983, read against the background of the legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000); *accord Monell*, 436 U.S. at 691.  Courts apply "rigorous standards of culpability and causation" to ensure that the municipality is not held liable solely for

---

[4]  The Court has construed Plaintiff's § 1983 claim against the City and County as one for false arrest in violation of his Fourth Amendment rights.  *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

the actions of its employees. *Jeffes*, 208 F.3d at 61 (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). Thus, in order for an individual whose constitutional rights have been violated to have recourse against a municipality under § 1983, he must show that he was harmed by a municipal "policy" or "custom." *Monell*, 436 U.S. at 690-91. A "policy" or "custom" cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan, J., concurring in part and concurring in the judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell* . . . .").

A municipal "policy" can include an officially promulgated policy, i.e., a formal act by a municipality's governing body, *Monell*, 436 U.S. at 690, or an act taken by a municipal employee who, as a matter of State law, has final policy making authority in the area in which the action was taken. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-81 (1986); *Walton v. Safir*, 122 F. Supp. 2d 466, 477 (S.D.N.Y. 2001) ("[T]he act of an official with final decision-making authority, if it wrongfully causes the plaintiff's constitutional injury, may be treated as the official act of the municipality."). A municipal "custom" need not receive formal approval by the appropriate decisionmaker: "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability *on the theory that the relevant practice is so widespread as to have the force of law*." *Brown*, 520 U.S. at 404 (emphasis added).

3.      Analysis of Plaintiff's Claims

Plaintiff has failed to allege facts plausibly showing an official policy promulgated by either the City of Albany or Albany County allowing the Albany Police to conduct stop-frisks and then file perjured arrest reports without conducting a thorough investigation to determine whether the actions taken by their arresting agents were lawful. (Dkt. No. 1 at ¶ 26.) The Court takes judicial notice that the Albany County District Attorney, who is alleged to have created the "blanket policy" authorizing the conduct, *id*. at ¶ 26, is an elected official, not a municipal employee.[5] Plaintiff has also failed to plausibly allege that conducting stop-frisks and filing perjured arrest reports without conducting a thorough investigation to determine whether the actions taken by the arresting agents were lawful was so widespread as to have the force of law, as required to show a municipal custom. Plaintiff has complained only about actions allegedly taken against him by Martin and Seward.

A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." *Tuttle*, 471 U.S. at 823. Plaintiff has failed to allege facts stating a plausible claim against the City of Albany and County

_____

[5] *See* Article 17, Section 1701 of the Albany County Charter, providing that "[t]here shall be a District Attorney elected from the County at large."

9

of Albany for failure to adequately train police officers employed by them, specifically Martin and Seward, as to the significance of the oath of duty not to commit perjury or plant evidence on a crime scene. *Id*. at ¶ 35. There are no allegations in the complaint showing that Seward and Martin were members of an Albany County law enforcement agency or suggesting that Albany County had any involvement whatsoever in the training of City of Albany police officers. Moreover, Plaintiff's complaint includes only conclusory allegations regarding the City and County's failure to train and does not identify municipal policies or customs regarding training as required for municipal liability under § 1983. *See Straker v. Metropolitan Transit Auth*., 333 F. Supp. 2d 91, 100 (E.D.N.Y. 2004) ("[C]onclusory allegations, unsupported by facts will be rejected as insufficient to state a claim under the Civil Rights Act.") (quoting *Price v. State of Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991) (internal punctuation omitted)).

Based upon the foregoing, the Court finds that Plaintiff has failed to state a municipal liability claim under § 1983 against the City of Albany or Albany County and recommends dismissal of those claims without prejudice and with leave to amend.

### C.      District Attorney David Soares

1.      Plaintiff's Claims

Plaintiff has sued District Attorney Soares for malicious prosecution[6] (Dkt. No. 1 at ¶ 44) because he allegedly: (1)  acted in a discriminatory manner towards Plaintiff by refusing to accept any cross-complaints, either oral or in writing, against Martin and Seward for falsifying business

---

[6] To state a claim for malicious prosecution for violation of a Plaintiff's Fourth Amendment rights under § 1983 or under New York law, a plaintiff must allege that (a) a proceeding was initiated against him, (b) the proceeding was terminated in his favor, (c) there was a lack of probable cause to initiate the proceeding, and (d) the prosecution was motivated by malice. *See Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997).

records, making false official statements, and filing false charges, and instead pursued the false complaint against Plaintiff after investigating the evidence, including the police dash camera video footage showing that drugs were planted on the scene and forged false criminal reports, *id.* at ¶¶ 27, 38; (2) created the policies and practices of the county and city which Martin and Seward used to pursue Plaintiff and falsely charge him, *id.* at ¶ 37; (3) exercised indifference towards Plaintiff by failing to supervise and discipline the agents Soares used to investigate criminal charges against Plaintiff, *id.* at ¶ 38; and (4) demonstrated actual malice against Plaintiff in commencing and continuing criminal proceedings against him in the absence of reasonable cause to stop-and-search, after having been notified of the mishandling of evidence, and having been placed on notice that the conduct leading up to Plaintiff's arrest was in clear violation of State Police Rules and Regulations and the Fourteenth Amendment. *Id.* at ¶ 43.

## 2.    Scope of Prosecutorial Immunity

"Because a public prosecutor cannot zealously perform the prosecutorial duties of the office if compelled to work under the constant threat of legal reprisals, such official is shielded from liability for civil wrongs by the doctrine of absolute immunity." *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995). The Second Circuit explained in *Hill*, *id.* at 660-61, that:

> In determining whether absolute immunity obtains, we apply a "functional approach," looking at the function being performed rather than to the office or identity of the defendant. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993). State prosecutors are entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process." *Imbler* [*v. Pachtman*, 424 U.S. 409, 430 (1976)]. Thus, a district attorney is absolutely immune from civil liability for initiating a prosecution and presenting the case at trial. *Id.* at 430-31; *Buckley*, 509 U.S. at 273. Such official is also immune for conduct in preparing for those functions; for example, evaluating and organizing evidence

for presentation at trial or to a grand jury, *Buckley*, 509 U.S. at 273, or determining which offenses are to be charged. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

"A prosecutor . . . has absolute immunity in connection with the decision whether or not to commence a prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) ("A prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges."); *Johnson v. City of New York*, No. 00CIV.3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000)[7] (prosecutorial functions that are protected by absolute immunity "include the decision to bring charges against a defendant"); *Halpern v. City of New Haven*, 489 F. Supp. 841, 843 (D. Conn. 1980) (prosecutorial immunity found where the prosecutor undertook no independent investigation of the charges and continued prosecution even after finding insufficient evidence to support the charges). Absolute immunity has been found to extend to such acts as falsification of evidence, coercion of witnesses, solicitation and subornation of perjured testimony, withholding of evidence, and the introduction of illegally-seized evidence. *Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir. 1981).

A prosecutor is entitled only to qualified immunity when engaged in conduct independent of prosecution such as investigative or administrative activity, rather than as the official charged with initiating and pursuing criminal prosecutions. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273

---

[7] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

(1993); *Bernard v. County of Suffolk*, 356 F.3d 495, 502-03 (2d Cir. 2004). Thus, a prosecutor is

not entitled to absolute immunity in situations such as those where he "supervises, conducts, or

assists in the investigation of a crime, or gives advice as to the existence of probable cause to

make a warrantless arrest   that is when he performs functions normally associated with a police

investigation." *Richards v. City of New York*, No. 97 Civ. 7990(MBM), 1998 WL 567842, at *2

(S.D.N.Y. Sept. 3, 1998) (citing *Burns v. Reed*, 500 U.S. 478, 493 (1991).

### 3.    Analysis of Plaintiff's Claims

The Court finds that Plaintiff's claim that Soares is liable for malicious prosecution under

§ 1983 because he maliciously refused to accept Plaintiff's complaints against Martin and

Seward for falsifying business records, making false official statements, and filing false charges,

and instead pursued the false complaint against Plaintiff after investigating evidence showing

lack of reasonable cause for a stop-and-search and being notified that evidence was mishandled

falls within the scope of absolute prosecutorial immunity as discussed above.

Plaintiff also claims that Soares created the policies and practices of the county and city

which Martin and Seward used to pursue and falsely charge him, and that he exercised

indifference towards Plaintiff by failing to supervise and discipline the agents used to investigate

criminal charges against Plaintiff. Those claims arguably may fall into the category of

administrative functions with respect to which Soares would only be entitled to qualified

immunity.

The Court finds with respect to those claims, however, that Plaintiff has failed to allege

facts plausibly stating a claim for malicious prosecution under § 1983. Plaintiff's allegations that

Soares created policies and practices of the city and county which Martin and Seward used to

falsely pursue charges against him and that Soares failed to supervise and discipline agents used to investigate Plaintiff are wholly conclusory. In fact, the complaint is devoid of a single factual allegation supporting those claims. *See Straker,* 333 F. Supp. 2d at 100 (conclusory allegations unsupported by facts are insufficient to state a claim under § 1983).

In light of the foregoing, the Court recommends that Plaintiff's § 1983 malicious prosecution claim against Soares be dismissed, and that the dismissal be with prejudice on absolute immunity grounds except as to Plaintiff's claims with regard to policies and practices allegedly created by Soars and his alleged failure to supervise and discipline the agents he used to investigate criminal charges against Plaintiff. As to those claims, the Court recommends that the dismissal be without prejudice and with leave to amend.

### D.    Martin, Seward, and Korkoff

Plaintiff has alleged that Defendants Martin and Seward planted false evidence during a warrantless stop and filed false arrest reports causing him to be arrested on false felony charges and confined for two weeks until he posted bond. (Dkt. No. 1 at ¶¶ 19-21.) Police Chief Korkoff is alleged to have been made aware of the arrest on false charges supported by planted evidence through reports submitted to him and nonetheless allowed Plaintiff to be arrested, charged, and confined in jail. *Id*. at ¶¶ 24, 28.

The Court construes Plaintiff's claims against Defendants Martin, Seward, and Korkoff under § 1983 as claims for false arrest and false imprisonment in violation of Plaintiff's rights under the Fourth Amendment. To state a claim for false arrest under § 1983 or New York law, a plaintiff must allege that (1) the defendant intended to confine him; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was

14

not otherwise privileged.  *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991).  "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment."  *Vasquez v. City of New York*, No. 99 Civ. 4606(DC), 2000 WL 869492, at *3 (S.D.N.Y. June 29, 2000) (quoting *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J. dissenting)).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court recommends that Plaintiff's § 1983 claims for false arrest and false imprisonment against Defendants Martin, Seward, and Korkoff be found to survive initial review and require a response.  In so recommending, the Court expresses no opinion as to whether the claims can withstand a properly filed motion to dismiss or for summary judgment.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) be **GRANTED**; and it is

**RECOMMENDED** that the complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** against Defendants City of Albany and Albany County; and it is further

**RECOMMENDED** that the complaint be **DISMISSED** as against Defendant District Attorney Soares, and that the **DISMISSAL BE WITH PREJUDICE ON ABSOLUTE IMMUNITY GROUNDS EXCEPT** as to Plaintiff's claims that Soares created practices and policies Martin and Soares used to pursue and falsely charge him, and that Soares failed to supervise and discipline the agents he used to investigate criminal charges against Plaintiff, and

as to those claims, the Court **RECOMMENDS THAT THE DISMISSAL BE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

      **RECOMMENDED** that the action be allowed to proceed against Defendants Martin, Seward, and Korkoff, and that Defendants, or their counsel, be required to file a response as provided for in Rule 12 of the Federal Rules of Civil Procedure; and it is further

      **RECOMMENDED** that in the event the District Court allows Plaintiff to file an amended complaint, he be instructed that any amended complaint be a complete pleading that supersedes his original complaint in all respects (and does not incorporate by reference any portion of his original complaint); and that he not attempt to reassert any claims that have been dismissed with prejudice by the District Court; and it is hereby

      **ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: June 21, 2016
      Syracuse, New York

                              Thérèse Wiley Dancks
                              United States Magistrate Judge

2000 WL 1335865
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Martin JOHNSON, Plaintiff,

v.

THE CITY OF NEW YORK, Assistant
District Attorney Robert Henoch, Captain
of Corrections Martin, Corrections Officer
Schmidt, Corrections Officer Brown and
Unidentified Correction Officers, Defendants.

No. 00CIV.3626(SHS).
|
Sept. 15, 2000.

OPINION AND ORDER

STEIN, D.J.

**\*1** Martin Johnson has brought this action pursuant
to 42 U.S.C. § 1983 seeking monetary damages on the
grounds that the defendants—the City of New York,
an Assistant District Attorney, and certain Corrections
Officers—violated his constitutional rights under the
Fourth, Eighth and Fourteenth Amendments to the U.S.
Constitution by failing to protect him from an attack
by fellow inmates against whom he had arranged to
testify. Johnson also asserts two tort claims. The Assistant
District Attorney moves to dismiss the complaint as it
pertains to him pursuant to Fed.R.Civ.P. 12(b)(6) for
failure to state a claim upon which relief can be granted
and pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject
matter jurisdiction. For the following reasons, the motion
is granted and the complaint is dismissed as to ADA
Henoch.

BACKGROUND

The facts are taken from plaintiff's complaint and are
assumed to be true for purpose of this motion. In May
of 1998 Johnson was arrested for allegedly selling crack
cocaine. Complaint at 4. Shortly after his arrest, he
entered into a cooperation agreement with ADA Henoch
to testify against several of his co-defendants. [1] *Id.* ADA
Henoch allegedly "assured" plaintiff at that time that he

"would protect him[ ]" from possible retaliation by his
co-defendants. *Id.* Johnson claims that he was being held
in Beacon, a housing area on Rikers Island, which was
in "the same general area" as where the people against
whom he was to testify were held and that he alerted
ADA Henoch of this fact. *Id.* ADA Henoch "explicitly assured
[him] that he would be safe" and that "he would be placed
in protective custody." *Id.* at 4–5. Plaintiff also alerted
defendant Corrections Officers Martin, Schmidt, Brown
and "Unidentified Correction Officers" to his danger. *Id.*
at 5.

On February 24, 1999, plaintiff was attacked by fellow
inmates "who called him a snitch as they beat and
kicked him." *Id.* As a result of the beating, Johnson
suffered a fractured ankle, injuries to his head, neck and
legs, and damage to his retina that required surgery. *Id.*
ADA Henoch, after learning of the attack on plaintiff,
"acknowledged [his] prior request for protection." *Id.*

As noted above, Johnson has filed this action against the
City of New York, Correction Officers Martin, Schmidt,
Brown, and ADA Henoch and the ADA has moved to
dismiss the complaint on the grounds that it fails to state
a constitutional claim for which relief may be granted
and that he is entitled to either absolute or qualified
prosecutorial immunity.

DISCUSSION

When reviewing a motion to dismiss, a court must accept
as true the factual allegations of the complaint and must
view the pleadings in the light most favorable to and draw
all reasonable inferences in favor of the non-moving party.
*See Jamison v. Dee,* 2000 WL 502871 (S.D.N.Y. April 27,
2000) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170,
1174 (2d Cir.1993)). Dismissal of the complaint is only
proper when "it appears beyond doubt that plaintiff can
prove no set of facts in support of his claim which would
entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–
46 (1957).

I. *Absolute Immunity*
**\*2** It is well-established that prosecutors are absolutely
immune from suits for damages arising from actions which
are "intimately associated with the judicial phase of the
criminal process." *Imbler v. Pachtman,* 424 U.S. 409,

430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). Such functions include the decision to bring charges against a defendant, *see Gan,* 996 F.2d at 530, presenting evidence to a grand jury, *see Barret v. United States,* 789 F.2d 565, 571–72 (2d Cir.1986), and the evaluation of evidence prior to trial. *See Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Absolute immunity is not available, however, when a prosecutor "undertakes conduct that is beyond the scope of his litigation-related duties." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

*Barbera v. Smith,* 836 F.2d 96, 100, is closely analogous to this action. In *Barbera,* the Second Circuit held that a prosecutor was not entitled to absolute immunity where he twice refused to provide a cooperating witness with police protection. *Id.* at 98. The witness had agreed to testify in return for a more lenient sentence and was murdered by a contract killer hired by the target of the prosecutor's investigation. *Id.* The Court found that "the government was still seeking evidence, including testimony from [the victim], that would enable it to prosecute ..." and that "this task [providing protection] was [not] so intimately associated with the judicial phase of the criminal process ..." as to entitle the prosecutor to absolute immunity. *Id.*

Here, as in *Barbera,* defendant's activities were not "so intimately associated with the judicial phase of the criminal process" as to entitle him to absolute immunity from suit. *See Gan,* 996 F.2d at 531 ("the claim that [the prosecutor] failed to protect [plaintiff] asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings. Accordingly, if [defendant] is to be accorded immunity ... it can only be qualified immunity ."). Therefore absolute immunity is not available to the district attorney in this action.

II. *Qualified Immunity*

In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983). Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *See Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 72 L.Ed .2d 396 (1982)). Dismissal for failure to state a claim is thus appropriate where the complaint itself presents the qualified immunity defense. *See, e.g., Green,* 722 F.2d at 1019. The United States Supreme Court has also held that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *See also Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987) (citing *Procunier v. Navarette,* 434 U.S. 555, 565 (1978) (prison officials entitled to dismissal of claims of violating prisoner's First and Fourteenth Amendment rights by interfering with mail where such rights had not been clearly established)). Even when viewed in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, *Mills,* 12 F.3d at 1174, Johnson's allegations regarding the District Attorney do not state a violation of a clearly established constitutional right. Thus, dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate. *See, e.g., Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990).

**\*3** Qualified immunity shields government actors performing discretionary functions from " 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Lennon v. Miller,* 66 F.3d 416, 420 (2nd Cir.1995) (quoting *Harlow,* 457 U.S. at 818). To determine whether a right was clearly established at the time defendant acted, the Court must consider: "(1) whether the right in question was defined 'with reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Gan,* 996 F.2d at 532 (quoting *Jermosen v.. Smith,* 945 F.2d 547, 550 (2d Cir.1992)).

The District Attorney claims that he is entitled to qualified immunity because, even if he had a constitutional duty to protect Johnson, it was not a clearly established duty. The Due Process Clause itself does not require the State to protect "the life, liberty, [or] property of its citizens against invasion by private actors." *Deshaney v. Winnebago*

*County Dep't of Soc. Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989). Therefore, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. The only judicially recognized exceptions to this rule are custodial relationships where "the State takes a person into its custody and holds him there against his will," *Id.* at 199–200, 109 S.Ct. at 1005 (the "special relationship" exception), or when the government affirmatively creates or increases the danger an individual is placed in. *See Dwares v. City of N.Y.,* 985 F.2d 94, 98–99 (2d Cir.1993) (the "state-created danger" exception).

Special relationships that have given rise to a governmental duty to protect against third-person attacks include "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child." *Gan,* 996 F.2d at 532 (citing cases).

The Second Circuit has also recognized the state-created danger exception to *DeShaney's* general rule. *See Dwares,* 985 F.2d at 99 (police officers agreed in advance with members of a group to allow the group to assault the plaintiff, did not interfere during the beating and did not arrest those who assaulted the plaintiff); *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998) (arresting officers returned gun to robbery victim and drove him to the scene of suspect's arrest, where the victim shot the suspect); *see also Freeman v. Ferguson,* 911 F.2d 52, 54 (8th Cir.1990) (reversing dismissal on qualified immunity grounds against police chief who instructed subordinates to ignore victim's request for protection from her husband, who was the chief's friend).

**\*4** Johnson contends that the District Attorney's proffer of the cooperation agreement and assurance that he would protect plaintiff conferred upon the District Attorney a constitutional duty to protect Johnson. [2] Plaintiff claims that the prosecutor's duty to protect him was clearly established by *DeShaney* and by *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison officials may be held liable under Eighth Amendment for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it). However, neither *DeShaney* nor *Farmer* clearly establish the law regarding plaintiff's allegations. While the very action in question need not have been previously held unlawful for a constitutional right to be clearly established, *Duncan v. Kean,* 1995 WL 649931, *3 (S.D.N.Y. Nov. 6, 1995) (citing *Aveni v. Mottola,* 35 F.3d 680, 686 (2d Cir.1994)), it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The Second Circuit has twice considered and rejected claims against prosecutors for failure to protect a witness from attack by a third party. *See Barbera,* 836 F.2d at 100–01; *Gan,* 996 F.2d at 533–34. In *Gan,* a panel of the Second Circuit wrote that

> "[p]laintiffs have not called to our attention any case before or since [*Barbera* ] ... in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held (a) to create a relationship that gives the complaining witness a constitutional right to protection, or (b) to impose a corresponding duty on a prosecutor."

*Id.* at 533–34.

Here, as in *Gan,* plaintiff points to no case, and the Court is aware of none, where it has been held that a prosecutor's alleged promise to protect an inmate who agrees to testify creates a special relationship that gives rise to a constitutional right to protection from a third party. Nor is the Court aware of any decision which has held that the mere proffer of a cooperation agreement by a prosecutor so increases the danger to an inmate that it creates a constitutional duty for the prosecutor to protect the inmate from potential attacks by third persons. A *prison official's* willful failure to protect an inmate from another inmate's violent actions violates the Constitution if the officer was "deliberate[ly] indifferen[t] to the consequences of his conduct for those under his control and dependent upon him," *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988).

However, no corresponding duty has been found to exist between an inmate and prosecutor.

Based on the limited caselaw in existence at the time of the alleged attack, and particularly because of the absence of any caselaw which holds that any state actor other than a prison official owes a duty to protect an inmate from another inmate's violent actions, it cannot be said that it was clearly established that defendant ADA Henoch had created or assumed a special relationship with Johnson imbuing him with a constitutional duty to protect him. Therefore, this Court "need not decide whether [it] would hold that these circumstances create such a right and corresponding duty, for in the absence of any such holdings and in the face of the general rule articulated in *DeShaney,* it could not have been clear to a reasonable prosecutor that his failure to provide protection ... would have violated [plaintiff's] rights under the Constitution." *Gan,* 996 F.2d at 534. Defendant Henoch is therefore entitled to qualified immunity.

III. *The Pendent State Claims*

**\*5** The ADA's motion to dismiss plaintiff's pendent state law claims is likewise granted. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the state law claims against ADA Henoch are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 338 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 98 L.Ed.2d 720 (1988); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 757 (2d Cir.1986).

IV. *CONCLUSION*

For the reasons set forth above, the prosecutor's motion to dismiss is granted and the complaint is dismissed as against the assistant district attorney.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1335865

Footnotes

1    The complaint states that plaintiff entered into the cooperation agreement with ADA Henoch on June 18, 1999. Complaint at 4. Plaintiff's opposition, however, states the cooperation agreement was entered into in "June of 1998". Opposition at 2. In addition, plaintiff has recently sought—successfully—to amend the complaint to allege that the agreement was made in June of 1998. Accordingly, this Court will assume that plaintiff entered into the cooperation agreement with defendant in June, 1998.

2    Johnson does not specify whether he is claiming defendant Henoch owed a duty to protect him based on the special relationship or state-created danger exception to the *DeShaney* rule. For the purpose of this motion, both arguments will be addressed.

                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by   White v. City of Chicago,   Ill.App. 1 Dist.,
December 29, 2006

1998 WL 567842
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Samantha RICHARDS, Plaintiff,

v.

THE CITY OF NEW YORK; New York City
Police Department; New York City Police
Commissioner Howard Safir; New York City
Detectives Kevin McCann, Daniel Carmosin
and Mike Paul; Detectives/Police Officers John
and Jane Doe; Assistant District Attorneys
Angela Domanski, Frank Laudadio, Dana
Grossblatt, Mitchell Benson, Lee Trink, Julie
Mendik, Heidi Mason, "John" Mahdavian (aka
Modavian), Ken Taub, and John and Jane Roe; and
District Attorney Charles J. Hynes, Defendants.

No. 97 CIV. 7990(MBM).
|
Sept. 3, 1998.

## Attorneys and Law Firms

Lawrence A. Vogelman, Esq., Shuchman & Krause–
Elmslie, PLLC, Exeter, NH, for Plaintiff.

Michael L. Spiegel, Esq., New York, for Plaintiff.

Michael Hess, Esq., Corporation Counsel of the City of
New York, Andrew Multer, Esq., Assistant Corporation
Counsel, New York, for Defendants.

## OPINION AND ORDER

MUKASEY, D.J.

**\*1**  Samantha Richards sues the City of New York,
the Police Department and certain law enforcement
personnel, including nine assistant district attorneys
("ADA's")—Mitchell Benson, Angela Domanski, Dana
Grossblatt, Frank Laudadio, John Mahdavian, Heidi
Mason, Julie Mendik, Ken Taub, and Lee Trink (the
"ADA defendants")—alleging a violation of 42 U.S.C. §

1983 and related state law torts. Plaintiff's claims arise out
of a murder investigation and prosecution in which she
was initially targeted but eventually cleared. Pursuant to
Fed.R.Civ.P. 12(b)(6), the ADA defendants now move to
dismiss the complaint as it pertains to them, asserting both
absolute and qualified immunity. For the reasons stated
below, this motion is granted as to ADA Grossblatt, and
granted in part and denied in part as to the remaining
ADA defendants.

I.

The following facts are taken from the complaint and
assumed to be true for purposes of this motion. In and
around September 1995, plaintiff and her two daughters,
then aged 4 and 5, respectively, lived in a Brooklyn
apartment with a man named Gersham O'Connor.
(Compl.¶¶ 18, 22) On September 11, 1995, O'Connor was
shot and killed while inside the apartment. (*Id.* ¶ 18)

During the ensuing police investigation, homicide
detectives, assisted by ADA's Trink and Mendik,
interviewed plaintiff several times. (*Id.* ¶ 20) Plaintiff
consistently denied any involvement in the crime,
explaining that O'Connor had been shot by "a tall, skinny
black man." (*Id.*) As part of their investigation, the police
also questioned plaintiff's daughters, who contradicted
their mother's denials and stated that they had seen
her commit the crime. (*Id.* ¶¶ 22, 23) According to the
complaint, the detectives elicited these statements from
the children through "a pattern of coercion, trickery and
misrepresentation" and with a reckless disregard for the
truth. (*Id.* ¶ 24)

Based in substantial part on the children's statements,
plaintiff was arrested and charged with O'Connor's
murder. (*Id.* ¶ 27) ADA Grossblatt prepared and
presented the case to the grand jury, which returned an
indictment against plaintiff. (*Id.* ¶ 45) At trial, however, "it
came to light that the children had never seen the plaintiff
shoot O'Connor and that their earlier false statements
were caused by the intentional, reckless and/or negligent
acts of the defendants." (*Id.* ¶ 28) Accordingly, all charges
against the plaintiff were dropped, and she was released.
(*Id.* ¶ 29)

This action followed. The complaint seeks to hold
the ADA defendants individually liable for violating

plaintiff's civil rights by "intentionally, maliciously and/ or ... reckless[ly]" investigating and prosecuting her for murder. (*Id.* ¶ 47) In particular, plaintiff alleges that the ADA defendants: "supervised," "assist[ed]," and "gave advice" to the police in the course of their investigation; "acted and conspired" with them in that investigation; "decided whether there was probable cause to arrest the plaintiff"; and/or "knew or should have known" that the police conducted "the investigation in disregard of the civil and constitutional rights of the plaintiff." (*Id.* ¶¶ 44, 46, 47) As noted, the ADA defendants now move to dismiss the complaint as it pertains to them.

## II.

**\*2** A motion to dismiss under Rule 12(b)(6) may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas v. City of New York,* 143 F.3d 31, 37 (2d Cir.1998) (internal quotation marks omitted). The court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See id.*

The ADA defendants raise two arguments in support of their motion. First, they contend that any actions they took in connection with the murder case against plaintiff were "intimately associated" with their quasi-judicial roles as prosecutors and therefore protected by absolute immunity. (*See* Def. Mem. at 6 (internal quotation marks omitted)) Second, the ADA defendants contend that, even if they are not entitled to absolute immunity for their actions, they are, as a matter of law, entitled to qualified immunity. I find neither argument persuasive.

A. *Absolute Immunity*
The parties agree that the question of whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993); *see also Kalina v. Fletcher,* 522 U.S. 118, ——, 118 S.Ct. 502, 508, 139 L.Ed.2d 471 (1997) (reaffirming this functional approach). "It is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983." *Ying Jing Gan,* 996

F.2d at 530 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). The "judicial phase of the criminal process" encompasses not only the actual trial, but also all actions that a prosecutor takes "in preparing for the initiation of judicial proceedings ... and which occur in the course of his role as an advocate for the State." *Kalina,* 522 U.S. at ——, 118 S.Ct. at 507 (internal quotation marks omitted). Such actions include the decision to bring particular charges against a defendant, *see Ying Jing Gan,* 996 F.2d at 530, the presentation of evidence to a grand jury, *see Barrett v. United States,* 798 F.2d 565, 571–72 (2d Cir.1986), and the evaluation and organization of evidence prior to trial. *See Kalina,* 522 U.S. at —— – ——, 118 S.Ct. at 507–08.

As the authorities cited above suggest, however, prosecutors do not have absolute immunity for every action taken in their official capacity. "Absolute immunity is not available ... when a prosecutor undertakes conduct that is beyond the scope of his litigation-related duties." *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987). Thus, when a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest—that is, when he performs functions normally associated with a police investigation—he loses his absolute protection from liability. *See Burns v. Reed,* 500 U.S. 478, 493, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) ("We do not believe ... that advising the police in the investigative phase of a criminal case is so intimately associated with the judicial phase of the criminal process ... that it qualifies for absolute immunity ." (internal quotation marks and citations omitted)); *see also Kalina,* 522 U.S. at ——, 118 S.Ct. at 508; *Ying Jing Gan,* 996 F.2d at 531; *Barbera,* 836 F.2d at 100.

**\*3** In this case, the complaint alleges two types of conduct by the ADA defendants. The first includes actions by those defendants in the course of, or in close connection with, the judicial phase of the criminal case against plaintiff. (*See, e.g.,* Compl. ¶ 47 (alleging that the ADA defendants maliciously "presented this case to the grand jury" and otherwise "caus[ed] [plaintiff] to be prosecuted")) For these and similar actions, the ADA defendants were acting in their role as advocates and therefore are entitled to absolute immunity. *See Imbler,* 424 U.S. at 430.

However, plaintiff alleges as well that those defendants, with the exception of ADA Grossblatt—who apparently did nothing more than prepare and present testimony to the grand jury (*See* Pl. Mem. at 4 n. 1)—also participated in the fact finding leading up to plaintiff's arrest by supervising, advising and assisting the police in their investigation of O'Connor's murder. It is also reasonable to infer from the complaint that those ADA defendants, again apart from Grossblatt, advised the police as to the existence of probable cause to arrest plaintiff. (*See* Compl. ¶ 44) Contrary to the ADA defendants' argument (*See* Def. Mem. at 7), such actions are not "intimately associated" with the judicial process but are rather paradigmatic examples of activities that fall outside the scope of a prosecutor's judicial function. *See Burns,* 500 U.S. at 493; *see also Kalina,* 522 U.S. at ——, 118 S.Ct. at 508; *Ying Jing Gan,* 996 F.2d at 531; *Barbera,* 836 F.2d at 100. Accordingly, to the extent that the ADA defendants—again, with the exception of ADA Grossblatt—engaged in the investigatory and non-judicial activities alleged in the complaint, they are not entitled to absolute immunity.

**B.** *Qualified Immunity*

In the alternative, the ADA defendants argue that they are entitled to qualified immunity for any actions they may have taken in connection with the murder investigation. "Government officials may enjoy a privilege of qualified immunity from liability for damages arising out of their performance of discretionary official functions so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Doe v. Phillips,* 81 F.3d 1204, 1211 (2d Cir.1996) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)), *cert. denied,* 117 S.Ct. 1244 (1997). Put otherwise, a government

official has qualified immunity for actions that were "objectively reasonable." *Day v. Morgenthau,* 909 F.2d 75, 78 (2d Cir.1990).

In this case, the ADA defendants assert baldly that "the Complaint fails to allege any facts which, if proven, would demonstrate that [their investigatory] actions were not objectively reasonable under the circumstances." (*See* Def. Mem. at 9) On the contrary, the complaint alleges that the ADA defendants, with a malicious or intentional state of mind, played a key role in an investigation predicated on trickery and coercion. It may well be that these allegations are unfounded or exaggerated. However, accepting them to be true and drawing all reasonable inferences in plaintiff's favor, I cannot say beyond doubt that plaintiff will be unable to prove that the ADA defendants acted in an objectively unreasonable manner. *See Thomas,* 143 F.3d at 36–37.

**\*4** For the above reasons, the ADA defendants' motion to dismiss is granted as to ADA Grossblatt, and granted as to the remainder of the ADA defendants to the extent the complaint seeks to hold them liable for actions intimately associated with their judicial functions. However, in accordance with the discussion above, the motion is denied to the extent the complaint seeks to hold the ADA defendants liable for supervising, participating with and assisting the police in their investigation of O'Connor's murder.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 567842

---

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2000 WL 869492
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

George VASQUEZ, Plaintiff,

v.

THE CITY OF NEW YORK, New York City Police
Department, New York City Housing Authority,
New York City Housing Police Officers John Doe
# 1 through # 5, New York City Police Officer
John Doe # 6, 9th Precinct, New York City Police
Officers John Doe # 7 and # 8, Defendants.

No. 99 Civ. 4606(DC).
|
June 29, 2000.

**Attorneys and Law Firms**

George Vasquez, New York, New York, Plaintiff, pro se.

Newman Fitch Altheim Myers, P.C., New York City
Housing Authority, By: Jami Berliner, New York, New
York, for Defendant.

Michael D. Hess, Corporation Counsel of the City of
New York, By: Frances Sands, New York, New York, for
Defendants City of New York and New York City Police
Department.

*MEMORANDUM DECISION*

CHIN, J.

**\*1** *Pro se* plaintiff George Vasquez was arrested and
incarcerated on September 21, 1995 for Criminal Sale
of a Controlled Substance in the Third Degree. He
remained incarcerated until April 17, 1996, when he
was acquitted of the charge after a jury trial. Vasquez
then commenced this civil rights action pursuant to 42
U.S.C. § 1983, alleging false arrest, false imprisonment,
and malicious prosecution by defendants, in violation
of his constitutional rights. Defendants move to dismiss
the complaint pursuant to Fed R. Civ. P. 12(b)(6) or,
in the alternative, for summary judgment, pursuant to
Fed.R.Civ.P. 56. Plaintiff did not respond to defendants'
motions. For the reasons that follow, the motions to
dismiss are granted and the complaint is dismissed.

*BACKGROUND*

The facts as alleged by Vasquez, and assumed to be true
on these motions to dismiss, [1] are as follows:

On September 21, 1995, plaintiff was arrested and
incarcerated for Criminal Sale of a Controlled Substance
in the Third Degree in violation of Penal Law §
220.39(1). [2] (Compl. ¶ 4; City's Notice of Motion, Ex.
A (Arrest Report)). The Criminal Felony Complaint
alleges in pertinent part that New York City Police
Officer Nathan McKinney observed Vasquez "give Maria
Nelson ... a narcotic drug, to wit five bags of heroin and
one bag of cocaine, in exchange for money." (City's Notice
of Motion, Ex. B (Criminal Felony Complaint)).

Vasquez was indicted by the Special Narcotics Grand Jury
on the charge of Criminal Sale of a Controlled Substance
in the Third Degree on November 30, 1995. (Compl. ¶ 4;
City's Notice of Motion, Ex. C (Grand Jury Indictment)).
On April 17, 1996, after a jury trial, he was acquitted of
the charge. (Compl. ¶ 4; City's Notice of Motion, Ex. D
(Acquittal)). Vasquez had been incarcerated from the time
of his arrest until his acquittal. (Compl.¶ 4).

On April 16, 1999, plaintiff filed the instant complaint,
seeking $500,000 in compensatory damages and $100,000
in punitive damages, alleging false arrest, false
imprisonment, and malicious prosecution. Defendants
City of New York (the "City") and the New York City
Police Department (the "NYPD") moved to dismiss the
complaint or, in the alternative, for summary judgment
on November 30, 1999. On December 3, 1999, defendant
New York City Housing Authority (the "NYCHA") filed
a similar motion. [3]

In an order dated December 8, 1999, I set a briefing
schedule and cautioned plaintiff that if he did not file
his opposition papers by January 10, 2000, the motions
would be granted by default or decided without his input.
By letter dated December 28, 1999, plaintiff requested
additional time to respond to the defendants' motions;
I granted that request and extended plaintiff's time to
respond until March 10, 2000. To date, plaintiff has not
filed papers opposing defendants' motions.

*DISCUSSION*

A. *General Legal Standards*

1. *Motion to Dismiss*

**\*2** In reviewing a motion to dismiss, I must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed under Rule 12(b)(6) unless it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). Therefore, the issue before the Court " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." ' *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235–236 (1974)), *cert. denied,* 519 U.S. 808 (1996). Moreover, the allegations of a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

2. *Section 1983*

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the defendants acted under "color of state law"; and (2) their conduct or actions deprived plaintiff of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States. *Shabazz v. Vacco,* No. 97 Civ. 3761(DC), 1998 WL 901737, at \*2 (S.D.N.Y. Dec. 28, 1998) (citing *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)).

To withstand a motion to dismiss, a § 1983 complaint must contain specific allegations of fact indicating a deprivation of constitutional rights. *See id.* In assessing a prisoner's claims under § 1983, the court "will dismiss a complaint that 'consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a court could find a [constitutional] violation." ' *Mitchell v. Keane,* 974 F.Supp. 332, 338 (S.D.N.Y.1997) (quoting *Martin v. New York State Dep't of Mental Hygiene,* 588 F .2d 371, 372 (2d Cir.1978)), *aff'd,* 175 F.3d 1008 (2d Cir.1999); *see also Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) (broad, simple, and conclusory statements do not constitute a claim under § 1983).

B. *Application*

Plaintiff alleges that he was "false[ly] arrest[ed] for a crime that [he] did not commit." (Compl.¶ 4). The complaint does not explicitly invoke any particular constitutional provisions. Because I am required to liberally construe plaintiff's *pro se* papers " 'to raise the strongest arguments that they suggest," ' *see Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)), I construe the complaint as seeking to raise two constitutional claims: (1) a Fourth Amendment false arrest/false imprisonment claim, *see Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) ("A § 1983 claim for false arrest rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause ...."); and (2) a Fourteenth Amendment malicious prosecution claim. *See Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994) ("Section 1983 liability may also be anchored in a claim for malicious prosecution, as this tort 'typically implicates constitutional rights secured by the fourteenth amendment, such as deprivation of liberty." ') (quoting *Easton v. Sundram,* 947 F.2d 1011, 1017 (2d Cir.1991), *cert. denied,* 504 U.S. 911 (1992)).

1. *The City and the NYPD Officers*

A. *False Arrest and False Imprisonment*

**\*3** To the extent that plaintiff is alleging false arrest and false imprisonment, they are considered synonymous causes of action. *See Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir.1991). "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." *Covington v. City of New York,* 171 F.3d 117, 125 (2d Cir.) (Glasser, J., dissenting), *cert. denied,* __ U.S. __, 120 S.Ct. 363 (1999).

The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York state law. *See Weyant,* 101 F.3d at 852. To state a claim for false arrest under New York state law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the

confinement was not otherwise justified. *See Posr, 944 F.2d at 97.*

For purposes of these motions to dismiss, I assume that Vasquez has alleged and can prove that, he was conscious of the confinement, and that he did not consent to the confinement. On the facts alleged, however, he cannot demonstrate that the confinement was not otherwise justified.

The existence of probable cause is a complete defense to an action for false arrest, even where a person is ultimately acquitted, because it constitutes justification. *See Weyant, 101 F.3d at 852* (citing *Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994)*); *see also Montalvo v. New York City Police Officer Jennings, No. 93 Civ. 8351(KMW), 1996 WL 148483, at *2 (S.D.N.Y. Apr. 1, 1996).* "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991),* cert. denied, *505 U.S. 1221 (1992).* The Second Circuit has held that a determination of whether probable cause to arrest existed may be made "as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers ." *Weyant, 101 F.3d at 852* (citations omitted). Furthermore, under New York law, a grand jury indictment creates "a presumption of probable cause that can be overcome only by a showing that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Bernard, 25 F.3d at 104; see also Green v. Montgomery, No. 99–7515, 2000 WL 674757, at *7 (2d Cir. May 24, 2000)* (citing *Marshall v. Sullivan, 105 F.3d 47, 54 (2d Cir.1996)*).

In the instant case, plaintiff was indicted by the Special Narcotics Grand Jury on November 30, 1995. Plaintiff's complaint pleads no facts suggesting fraud, perjury, suppression of evidence, or police misconduct. Nor does he allege any facts to call into question the presumption of probable cause created by the grand jury indictment. *See McSorley v. Consolidated Rail Corp., 581 F.Supp. 642, 643 (S.D.N.Y.1984).* Even under the liberal pleading requirements of *Fed.R.Civ.P. 8,* the complaint must allege facts showing that the pleader is entitled to relief. *Id.* at 644. Naked assertions and conclusory allegations cannot

defeat a motion to dismiss. *See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983); Martin v. New York State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir.1978).* Thus, plaintiff fails to state a Fourth Amendment claim for false arrest or false imprisonment against the NYPD police officers, and the claims against the officers are hereby dismissed.

**\*4** Insofar as plaintiff's false arrest and false imprisonment claims against the City are based on the alleged actions of the NYPD officers, those claims must be dismissed as well. *See Thomas v.. Roach, 165 F.3d 137, 145 (2d Cir.1999)* ("A municipality is subject to liability for damages under *§ 1983* for the unconstitutional acts of *its employees." )* (emphasis added).

**B.** *Malicious Prosecution*

Plaintiff's malicious prosecution claim fails for similar reasons.

The elements of a cause of action for malicious prosecution are "(1) the initiation of a proceeding, (2) termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Colon v. City of New York, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468 N.Y .S.2d 453, 455 (1983).* For purposes of these motions to dismiss, I assume that a proceeding was initiated against Vasquez and that it was terminated in his favor. He fails, however, to show that the officers lacked probable cause to initiate the proceeding or that the prosecution was motivated by malice.

The existence of probable cause defeats a claim for malicious prosecution. *Id.* As discussed above, a grand jury indictment creates a presumption of the existence of probable cause, and "[u]nder such circumstances, the plaintiff must plead facts which, if proved, would overcome the *prima facie* showing." *McSorley, 581 F.Supp. at 643.* Again, plaintiff has failed to plead facts sufficient to overcome the presumption of probable cause created by the indictment. Furthermore, Vasquez's complaint is devoid of any allegations of malice on the part of the officers. Accordingly, plaintiff fails to state a claim for malicious prosecution against the NYPD officers.

Because Vasquez cannot maintain his malicious prosecution claim against the City if the NYPD officers

are not liable, *see Thomas,* 165 F.3d at 145, his malicious prosecution claim against the City is also dismissed.

### 2. *New York City Police Department*

Vasquez's claims against the NYPD must be dismissed both because the claims against the officers must be dismissed and because the NYPD is not a proper defendant.

Under the City Charter, "New York City agencies such as the [NYPD] are organizational subdivisions of the City of New York lacking independent legal existence and, therefore, cannot be sued under § 1983." *Campbell v. New York Police Dep't,* No. 95 Civ. 1478(FB), 1996 WL 118547, at *1 (E.D.N.Y. Mar. 8, 1996); *see also East Coast Novelty Co. v. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992). Accordingly, the plaintiff's claims against the NYPD are dismissed.

### 3. *NYCHA and the NYCHA Police Officers*

Finally, Vasquez's claims against NYCHA and its police officers must be dismissed because they, too, are not proper defendants.

The NYCHA Police Department did not even exist on September 21, 1995, the day of plaintiff's arrest. On September 9, 1994, the Mayor issued Executive Order No. 13, which provided that as of October 1, 1994 or as soon as possible thereafter "the [NYPD] shall assume the functions of the Housing Authority Police Department and uniformed housing police force thereof." Executive Orders of the Mayor of New York, No. 13. Consequently, in April of 1995, the Housing Authority Police Department (the "HAPD"), a division of the NYCHA, was transferred to and became a part of the NYPD. *See Ganley v. Giuliani,* 94 N.Y.2d 207, 214–15, 723 N.E.2d 73, 75–6, 701 N.Y.S.2d 324, 326–27 (1999).

**\*5** Accordingly, the officers who arrested Vasquez could not have been NYCHA police officers, and thus NYCHA cannot be held liable for the arresting officers' actions.

### *CONCLUSION*

Defendants' motions to dismiss are granted. The complaint is dismissed in its entirety, with prejudice.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2000 WL 869492

---

Footnotes

1   I decide these motions as motions to dismiss, as I have considered only facts drawn from the complaint, the exhibits annexed thereto, documents incorporated into the complaint by reference, and documents that are in the public record and that are judicially noticeable. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); Fed.R.Evid. 201(b)(2). Defendants have submitted a number of public records from Vasquez's criminal file as exhibits, including the New York City Police Department arrest report, the criminal felony complaint, the indictment, and the acquittal. "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998), *cert. denied,* 525 U.S. 1103 (1998); *see also 5–Star Management, Inc. v. Rogers,* 940 F.Supp. 512, 518–19 (E.D.N.Y.1996). Plaintiff had actual notice of all the information in these documents and has relied on them in framing his complaint. Therefore, I may rely on them in deciding the motions to dismiss. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991), *cert. denied,* 503 U.S. 960 (1992). Moreover, I rely on the public documents not for the truth of the facts set forth therein, but for the fact that the documents existed.

2   The complaint states that plaintiff was arrested on September 9, 1995. (Compl.¶ 4). The arrest report indicates that the date was September 21, 1995. (City's Notice of Motion, Ex. A (Arrest Report)).

3   Although counsel for the City Defendants and the NYCHA did not move on behalf of the unidentified NYPD and NYCHA police officers named in the complaint as John Does 1–8, the claims against these defendants must be dismissed as well for the reasons set forth below.