UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIE MORRIS,

                              Plaintiff,

                                                              5:16-CV-00601
v.
                                                              (NAM/TWD)
JASON MARTIN, et al.,

                              Defendants.
_____

APPEARANCES:

WILLIE MORRIS
14-A-0894
Plaintiff, pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

## I.    INTRODUCTION

        The Clerk has sent to the Court for initial review the amended complaint in this 42 U.S.C.

§ 1983 civil rights action brought by Plaintiff Willie Morris against Defendants Jason Martin and

Jason Seward, City of Albany Police Officers; Steve Korkoff, City of Albany Chief of Police;

City of Albany;  David Soares, Albany County District Attorney; and Albany County.  (Dkt. No.

13-1.)

        Upon review of Plaintiff's original complaint (Dkt. No. 1), the Hon. Norman A. Mordue,

Senior United States District Court Judge, issued a Memorandum-Decision and Order: (1)

dismissing the complaint against Defendants City of Albany and County of Albany without

prejudice and with leave to amend; (2) dismissing with prejudice, on grounds of absolute immunity, all claims against Defendant District Attorney Soares, except for the following claims which were dismissed without prejudice and with leave to amend: (a) the claim that Soares created practices and policies that he and Defendant Martin used to pursue and falsely charge Plaintiff; and (b) the claim that Soares failed to supervise and discipline the agents he used to investigate criminal charges against Plaintiff; and (3) ordering that the action proceed against Defendants Martin, Seward, and Korkoff. *Morris v. Martin*, No. 5:16-CV-601 (NAM/TWD), 2016 WL 4098611, at *1 (N.D.N.Y. July 28, 2016).

Plaintiff thereafter moved for reconsideration of the dismissal with prejudice of claims against Soares on absolute immunity grounds. (Dkt. No. 13.) The motion for reconsideration has been denied by Judge Mordue. (Dkt. No. 15.)

Plaintiff submitted the amended complaint now before the Court for initial review on November 29, 2016. (Dkt. No. 13-1.) Thereafter, Defendants Martin, Seward, Korkoff, and the City of Albany filed answers to the original complaint with cross-claims against Defendants Soares and Albany County.[1] (Dkt. Nos. 20 and 22.) By Text Order dated December 13, 2016, this Court directed that those answers and cross-claims be held in abeyance pending initial review of the amended complaint. (Dkt. No. 24.)

## II.     LEGAL STANDARD FOR INITIAL REVIEW OF PLAINTIFF'S AMENDED COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

---

[1] It is unclear why the City of Albany filed an answer when Plaintiff's claims against it in his original complaint had been dismissed without prejudice upon initial review. *Morris,* 2016 WL 4098611, at *1.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual

allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*.

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.  AMENDED COMPLAINT

### A.  Police Officers Jason Martin and Jason Seward

Plaintiff alleges that on or about August 4, 2012, Albany Police Officer Milton Johnson ("Johnson"), intending to confine him for questioning with regard to unrelated, unsolved crimes, stated falsely that he had received a call notifying him that Plaintiff had been in the vicinity of the Port Tavern Bar brandishing a loaded firearm, and that he had left in a gold color Nissan.  (Dkt.

No. 13-1 at 3.[2]) Johnson told the false statement to Police Officers Jason Martin ("Martin") and Jason Seward ("Seward"), hoping they would find a loaded firearm or other contraband on Plaintiff's person in order to bring him in to question him on the unrelated, unsolved crimes. *Id.* at 3-4. Martin and Seward pursued Plaintiff but did not bring him in for questioning or charge him in connection with the information received by Johnson. *Id.* at 4.

On or about August 9, 2012, Plaintiff was subjected to a traffic stop by Martin, who asked Plaintiff for his license and registration. *Id.* Plaintiff gave Martin his license, registration, and insurance card, which Martin ran through a thorough check at 2:17:22, finding nothing. *Id.* at 5. Martin then began asking Plaintiff questions about weapons and requested permission to search Plaintiff's vehicle, despite having no probable cause. *Id.* at 4. Plaintiff contends that Martin's intention was to follow up on Johnson's August 4, 2012, false information and attempt to bring Plaintiff in for questioning regarding unrelated, unsolved crimes. *Id.*

Martin placed his hand on his service weapon and opened Plaintiff's driver's side door, causing Plaintiff to have a spontaneous reaction by driving off in fear for his life, crashing his vehicle, and fleeing on foot at 2:21:29. *Id.* at 4-5. Plaintiff reportedly had something in his hand while fleeing the crash site. *Id.* at 5. Plaintiff was apprehended at about 2:32 on the roof of 99 Sherman Street, where Martin had unexpectedly come upon a drug house from which he recovered and secured in his possession a large amount of drugs at around 2:38:48. *Id.*

---

[2] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. The Court has not referenced the allegations in the amended complaint by paragraph number because Plaintiff has not used consecutively numbered paragraphs throughout the entire pleading. (*See* Dkt. No. 13-1.)

Seward arrived at the crash scene to secure Plaintiff's vehicle at around 2:24:48. *Id.* At 3:06:24, Seward reported finding drugs next to the vehicle while he was securing it and finding more drugs in front of the residence known as 78 Lexington Avenue. *Id.* Seward radioed in the finding of drugs, and forensic investigators took pictures of the area in which the drugs were allegedly thrown and later recovered. *Id.* at 5-6. According to Plaintiff, footage on a police dash video camera on a patrol car depicted the crashed vehicle with great clarity at about 2:00am and showed no drugs in the area in which Martin falsely claimed drugs were found after allegedly being tossed by Plaintiff while fleeing.[3] *Id.* at 5. Plaintiff alleges that Martin had actually recovered the drugs from 99 Sherman Street in connection with the arrest of another individual on drug charges on that evening, and Martin and Seward tampered with the evidence and conspired to plant the drugs near Plaintiff's vehicle. *Id.* at 6.

Plaintiff alleges that Martin and Seward violated his Fourth Amendment right to remain free by making an illegal traffic stop, pursuing and apprehending Plaintiff without a warrant, and conspiring to plant false evidence causing Plaintiff to be arrested on false felony drug charges. *Id.* at 10-11. After being transported to the hospital for treatment of injuries sustained in the accident, Plaintiff was taken to Albany Police Division # 2 and placed in an interrogation room where he was left shackled for hours until homicide detectives arrived to question him on matters unrelated to his arrest. *Id.* Plaintiff alleges that Seward and Martin, along with other detectives

---

[3] If, as the police log shows, Martin ran the check on his license, registration, and insurance card on or about 2:17:22, and the check was undertaken prior to the time Plaintiff crashed his vehicle, dash cam footage taken at approximately 2:00am would not have shown Plaintiff's crashed vehicle. (Dkt. No. 13-1 at 5, 48.) According to the criminal complaint filed with regard to the drug possession, Plaintiff threw crack cocaine to the ground at 79 Lexington Avenue at 0217 hours. (Dkt. No. 1-1 at 5.)

and police officers, harassed him on a number of occasions during the night in question and other occasions leading up to the presentment of weapons possession charges arising out of the August 9, 2012, incident on January 6, 2013.[4] *Id.*

Plaintiff claims to have been falsely incarcerated for two weeks until he was able to post bond. *Id.* at 12. Plaintiff alleges that during the time he was unlawfully detained he suffered as a result of being placed in harsh and inhumane conditions under mental and emotional distress, and had weight loss and sleeplessness leading to migraine headaches and hospitalization for stress in violation of his Eighth and Fourteenth Amendments. *Id.* at 11. In or about October 2013, Plaintiff was acquitted on the drug charges. *Id.* at 51.

### B.    Chief of Police Steve Korkoff

Plaintiff alleges that Korkoff exercised deliberate indifference to his health and safety when, after seeing the dash cam footage and thereby becoming aware that Plaintiff's arrest was based on false charges supported by planted evidence, and that there was no probable cause for his arrest, he still allowed Plaintiff to be arrested, charged, and confined. (Dkt. No. 13-1 at 12.) Plaintiff further alleges that Korkoff failed to supervise his subordinates Martin and Seward with regard to the false evidence, and when Plaintiff advised Korkoff in writing of the false evidence, Korkoff failed to supervise, intervene, or discipline Martin and Seward and to prevent them from further corrupt practices. *Id.* at 12-13. Korkoff is also alleged to have acted in a discriminatory manner in refusing to accept Plaintiff's cross-complaints against Martin and Seward. *Id.* at 15.

---

[4] As noted in the Court's initial review of Plaintiff's original complaint, consideration of the possible applicability of *Heck v. Humphrey*, 512 U.S. 477 (1994) with regard to the weapons possessions charges is premature. (Dkt. No. 4 at 6.)

**C.      District Attorney David Soares**

Plaintiff alleges that Soares: (1) created a blanket policy "to allow the Albany Police to engage in conduct involving dishonesty, fraud, deceit, and conduct that is prejudicial to the administration of justice. . . e.g., 'Stop and Frisk', Perjury, and Tampering with Evidence. . . ." (Dkt. No. 13-1 at 14); (2) ignored the dash cam video footage, which allegedly exonerated Plaintiff, thus allowing Plaintiff to be jailed under harsh and stressful conditions, *id*.; (3) failed to accept Plaintiff's cross-complaint against Martin and Seward, who are identified by Plaintiff as Soares' "subordinate officers," "agents," and "subordinate agents," *id*. at 14-15, 19-20; (4) failed to supervise his subordinate ADA Sean Childs (who allegedly allowed a witness to commit perjury and withheld exculpatory evidence at a pretrial suppression hearing in the prosecution of Plaintiff) after Soares had been put on notice of the trumped up charges and malicious prosecution; (5) failed to discipline his "agents" Martin and Seward "whom he used to investigate criminal charges against plaintiff, even after finding out that his agents broke the law and intentionally planted false evidence, and falsified business records, as well as perjured themselves, under oath in an attempt to maliciously prosecute plaintiff, due to unrelated and unsolved matters," *id*. at 19; and (6) used false criminal reports to bring false felony charges against Plaintiff and prosecute the charges.  *Id*. at 19-20.

**D.      City and County of Albany**

Plaintiff alleges, again in wholly conclusory fashion, that the City of Albany and County of Albany exercised deliberate indifference towards Plaintiff by enforcing Soares' blanket policy

regarding police conduct without conducting a thorough investigation into unlawful actions, as is the normal policy in determining whether its agent's actions were lawful. (Dkt. No. 13-1 at 14.)

Plaintiff further alleges that as a result of the City's and County's gross negligence in failing to monitor its officers, lack of supervision and training, and failing to abide by legislatively enacted rules and regulations, Martin and Seward were able to circumvent, ignore, and break the law by tampering with drugs found at 99 Sherman and falsely arrest Plaintiff. *Id.* at 18. According to Plaintiff, the City and County failed to properly train and supervise police officers employed by them with regard to illegal stops and detention, search and seizures, and stop and frisk practices in inner cities such as Albany. *Id.* at 17. The City and County also failed to adequately train police officers with regard to properly restraining a crime scene and evidence collection, leaving "Martin and Seward in a complicated situation, in which they had not been efficiently trained to handle." *Id.* Defendants were in the position of wanting to stop and frisk the plaintiff without a warrant but not knowing how to properly do so.

## IV. ANALYSIS

### A. Martin, Seward, and Korkoff

Plaintiff has alleged essentially the same false arrest and false imprisonment claims against Defendants Martin, Seward, and Korkoff found in his original complaint. (*Compare* Dkt. Nos. 1 and 13-1.) The District Court previously ordered the action to proceed against those three Defendants. *Morris*, 2016 WL 4098611, at *1. Therefore, the Court recommends that the action proceed against Martin, Seward, and Korkoff with the amended complaint (Dkt. No. 13-1) as the operative pleading, and that they or their counsel be ordered to file a response to the amended complaint in accordance with Rule 12 of the Federal Rules of Civil Procedure.

9

**B.      Soares**

1.      Claims Previously Dismissed with Prejudice on Absolute Immunity
Grounds

Most of the claims alleged against Soares in Plaintiff's original complaint were dismissed

on absolute prosecutorial immunity grounds.  Plaintiff's amended complaint largely repeats those

claims, including that (1) Soares ignored the dash cam video footage in his possession which

exonerated Plaintiff; (2) used false criminal reports to prosecute felony charges against Plaintiff;

and (3) allowed Martin and Seward to use planted evidence and falsified business records to

support the felony drug charges against Plaintiff, and to perjure themselves, under oath in an

attempt to maliciously prosecute Plaintiff.  (Dkt. No. 13-1 at 15, 19, 22.)   As previously

determined, those claims are foreclosed by absolute prosecutorial immunity.[5]  *See Peay v. Ajello*,

470 F.3d 65, 67-68 (2d Cir. 2006) ("Plaintiff's claims against [his prosecutor] which encompass

activities involving the initiation and pursuit of prosecution [including fabricating evidence used

at trial, withholding exculpatory evidence, and suborning perjury], are foreclosed by absolute

prosecutorial immunity, regardless of their alleged illegality."); *Hill v. City of New York*, 45 F.3d

653, 661 (2d Cir. 1995) (Assistant District Attorney's alleged acts of, *inter alia*, "conspiring to

present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were

"clearly protected by the doctrine of absolute immunity as all are part of his function as

advocate.").

---

[5] Plaintiff's conclusory allegation that Soares conspired with Martin and Seward to frame him (Dkt. No. 13-1 at 27-28) is covered by absolute immunity for the same reasons as Soares' independent actions, as discussed in the Court's initial review of Plaintiff's original complaint. (*See* Dkt. No. 4.)

In his amended complaint, Plaintiff has added a claim that Soares failed to supervise ADA Childs, who allegedly withheld exculpatory evidence and allowed a witness to commit perjury during a suppression hearing in the handling of Plaintiff's prosecution in connection with a January 6, 2013, arrest in which Plaintiff was allegedly subjected to false charges. *Id*. at 8, 19. In *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009), the Supreme Court extended prosecutorial immunity to claims against a district attorney for failure to properly train and supervise assistant prosecutors who failed to turn over impeachment material in connection with a criminal prosecution. *See also, D'Alessandro v. City of New York*, No. 13-CV-930 (SLT), 2016 WL 6962516, at * 5 (E.D.N.Y. Nov. 28, 2016) (under *Van de Kamp*, failure to train assistant prosecutors and deliberate indifference claims against district attorney are prosecutorial in nature even though they center on the district attorney's administrative obligations.); *Jones v. City of New York*, 988 F. Supp. 2d 305, 316-17 (E.D.N.Y. 2013) (training and supervision provided by district attorney's offices to its prosecutors concerning the proper disclosure of exculpatory or impeachment material is a prosecutorial function entitled to absolute prosecutorial immunity). Based on the foregoing, the Court finds that Plaintiff's new claim regarding Soares' failure to properly supervise ADA Childs is also foreclosed by absolute prosecutorial immunity.

2.    Failure to Consider Plaintiff's Cross-Complaint

Plaintiff has alleged in his amended complaint that Soares "acted and failed in his obligated duty as a minister of Justice and Civil Servant of Albany County to accept any cross-complaint orally or in writing from the plaintiff against his subordinate officers (defendant's (sic) Seward and Martin) based on their acts of tampering with, and the planting of false physical

evidence in the form of drug proceeds," along with other alleged misconduct in connection with Plaintiff's arrest. *Id.* at 14.

A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Nevertheless, "where a governmental entity enacts a policy which acts as a blanket proscription against cross-complaints, the cross-complainant's constitutional rights are violated." *Staley v. Grady*, 371 F.Supp. 2d 411, 415 (S.D.N.Y. 2005) (citing *Myers v. County of Orange*, 157 F.3d 66, 76 (2d Cir. 1998) (noting that a blanket no cross-complaint policy "bears no rational relationship to the legitimate governmental interest in impartial law enforcement and thus violate[s] . . . equal protection.").

Plaintiff does not allege that Soares had a blanket policy of prohibiting or refusing to consider cross-complaints, only that he failed in his duty to investigate Plaintiff's cross-complaint. (See Dkt. No. 13-1.) Therefore, the Court finds that Plaintiff has failed to state an equal protection claim under *Myers*. Absent facts plausibly alleging a blanket policy, Plaintiff's claim that Soares failed to consider his cross-complaint falls within the scope of prosecutorial immunity. As such, the Court recommends that Plaintiff's cross-complaint claim be dismissed with prejudice on absolute immunity grounds. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) ("It is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983.") (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *Jones,* 988 F.Supp. 2d at 312 (decisions about investigation, disclosure and use of information, and to continue prosecuting plaintiff "were exercises of legal judgment

undertaken in preparation for trial."); *Robinson v. Rome*, No. 11-CV-1411 (NGG) (LB), 2011 WL 1541044, at * 3 (E.D.N.Y. April 20, 2011) (ADA's failure to sufficiently investigate the case and decision to rely on false evidence are "'prosecutorial'   as opposed to 'investigative'   in nature.").

### 3.     Blanket Policy Regarding Police Conduct

The remaining claim asserted against Soares is that he created a blanket policy "to allow the Albany Police to engage in conduct involving dishonesty, fraud, deceit, and conduct that is prejudicial to the administration of justice. . . e.g., 'Stop and Frisk', Perjury, and Tampering with Evidence. . . ." (Dkt. No. 13-1 at 14.)

In the initial review of Plaintiff's original complaint, the Court concluded that Plaintiff's allegations regarding the creation of a blanket policy by Soares allowing improper conduct by the Albany Police were wholly conclusory. (Dkt. No. 4 at 13-14.) The District Court dismissed the claim for failure to state a claim, and Plaintiff was granted permission to file an amended complaint. *Morris*, 2016 WL 4098611, at * 1.

The Court finds that in his amended complaint Plaintiff has again failed to allege specific facts plausibly showing that Soares created a blanket policy allowing the Albany Police to engage in dishonest, fraudulent, and deceitful conduct, perjury, or tampering with evidence, and that the alleged wrongful conduct of the Albany police officers and Chief of Police was a result of following that policy. Plaintiff's attempt to show a policy by claiming that his arrest by the Albany Police on false charges on January 6, 2013, provides another example of corrupt police practices, is devoid of facts showing that the arrest was the result of the alleged policy created by Soares and, therefore, unhelpful to Plaintiff. (Dkt. No. 13-1 at 8.)

Based upon the foregoing, the Court finds that Plaintiff has failed to state a claim against Soares for the implementation of a blanket policy allowing police misconduct in his amended complaint. Inasmuch as Plaintiff has now had two opportunities to plead such a claim and has yet to set forth any specific factual allegations plausibly supporting his conclusory assertion regarding Soares, or any allegations suggesting there may be a factual basis for doing so, the Court recommends that the claim be dismissed with prejudice. *See Ricciuti v. N.Y.C. Trans. Auth.*, 941 F.3d 119, 124 (2d Cir. 1991) (allegations of policy or custom are insufficient if wholly conclusory); *Jenkins v. County of Washington*, 126 F.Supp. 3d 255, 266 (N.D.N.Y. 2015) (official capacity claim against district attorney where the complaint was devoid of factual allegations plausibly suggesting that alleged violations occurred pursuant to an official policy, practice, or custom and contained only conclusory allegations); *Maynard v. City of New York*, No. 13-CV-3412 (CM), 2013 WL 6667681, at * 4 (S.D.N.Y. Dec. 17, 2013) ("Conclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim."); *Houghton v. Cardone*, 295 F.Supp. 2d 268, 278-79 (W.D.N.Y. 2003) (conclusory allegations of existence of a policy or custom are wholly insufficient to state a claim).

### C.     City of Albany

Upon review of Plaintiff's original complaint, this Court recommended dismissal of his municipal policy and failure to train and supervise claims against the City of Albany on the grounds that the complaint failed to allege facts plausibly showing that the City had a policy of allowing its police department to conduct stop-frisks and file perjured arrest reports. (Dkt. No. 4 at 9.) The Court also recommended dismissal of Plaintiff's inadequate training and supervision

claims against the City on the grounds that they were conclusory. *Id.* at 10. The District Court dismissed Plaintiff's claims against the City without prejudice and with leave to amend. *Morris*, 2016 WL 4098611, at * 1.

Plaintiff has alleged more specific facts regarding the City's alleged policy and its training and supervision of its police officers in his amended complaint. Therefore, mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that the § 1983 allegations in Plaintiff's amended complaint with regard to the City's alleged municipal liability and failure to train and supervise are adequate to survive initial review and recommends that the District Court require a response from the City. In doing so, the Court expresses no opinion as to whether Plaintiff's claims would survive a properly made motion to dismiss or motion for summary judgment.

### D. County of Albany

In his amended complaint, Plaintiff alleges that the County of Albany exercised deliberate indifference by enforcing the blanket policy created by Soares to allow the Albany Police to engage in misconduct. (Dkt. No. 13-1 at 14.) Plaintiff has also alleged that Albany County failed to provide the police officers with proper training and supervision regarding illegal stops and detention, searches and seizures, stop and frisk as practiced in cities like Albany, and securing a crime scene, thereby causing Plaintiff to be illegally stopped and arrested on false charges. *Id.* at 14, 17-18. In addition, Plaintiff claims that the County was grossly negligent and showed deliberate indifference in failing to monitor officers, thereby allowing Martin and Seward to skirt the rules, and in failing to discipline Martin and Seward. *Id.* at 18.

Plaintiff has not, however, alleged facts showing that Albany County had direct control over the Albany Police Department and its officers, or played any role in the training and supervision of members of the Albany Police Department. The Court takes judicial notice that the Albany Police Department is a Department of the City of Albany, not the County of Albany. *See* www.albanyny.org/Government/Departments.aspx (site last visited on January 3, 2017). The Court also takes judicial notice that the Albany County Sheriff's Office is a Department of Albany County. *See* www.albanycounty.com/Government/Departments.aspx (site last visited on January 3, 2017). The Plaintiff has not alleged any misconduct by members of the Albany County Sheriff's Department.

Soares is the Albany County District Attorney, and there are limited instances in which a County can be held liable for a district attorney's actions. *See Myers*, 157 F.3 66; *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988). However, when prosecuting a criminal matter, a district attorney represents the State, not the County, and "the County cannot be said to be responsible" for the district attorney's misconduct in an individual determination about whether to prosecute violations of state penal laws. *See Myers,* 157 F.3d at 77; *Baez*, 853 F.2d at 77. Therefore, Plaintiff has no claim against Albany County under § 1983 with respect to those matters specifically regarding the prosecution of Plaintiff on which Soares has been found to have absolute prosecutorial immunity.

A County can be held liable for policies implemented by the district attorney when he or she is acting as the final policy maker for the County in a particular area, as opposed to making

determinations with regard to prosecution in an individual case.[6]  *See e.g., Myers*, 157 F.3d at 77

(County liable for the district attorney's managerial decision that directed the local Port Jervis

police and county ADA's to engage in investigative procedures that violated the plaintiff's equal

protection rights   namely implementation of an unconstitutional policy against consideration of

cross-complaints); *Gentile*, 926 F.2d at 152 n.5 (although the County cannot be liable for the

ADA's improper filing of an indictment, liability can be based on its "long history of negligent

disciplinary practices regarding law enforcement personnel, which gave rise to the individual

defendants' conduct in promoting malicious prosecution of plaintiffs.")

As discussed above, Plaintiff has now failed in two attempts to allege specific facts that

plausibly show that Soares implemented a blanket policy created by him to allow the Albany

Police to engage in misconduct.  (Dkt. No. 13-1 at 14.)  In addition, unlike in *Myers*, Plaintiff has

not alleged the existence of a policy against consideration of cross-complaints.  Absent factual

allegations supporting the assertion that the prosecution of Plaintiff and rejection of his cross-

claim resulted from the implementation and application of unconstitutional policies by the

district attorney, or a long history of ignoring or encouraging unconstitutional conduct by police

officers, there is no basis for finding liability against the County for Soares' actions in connection

with the prosecution of Plaintiff.

In light of the foregoing, the Court recommends that Plaintiff's claims against Albany

County be dismissed, and because there are no allegations in the amended complaint suggesting

---

[6]  Under New York law, district attorneys are generally presumed to be local county
officers, not state officers.  *See* N.Y. Pub. Off. Law § 2.

that Plaintiff would be able to plausibly show violation of his constitutional rights by Albany County if given a third attempt, the Court recommends that the dismissal be with prejudice.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that the amended complaint be **DISMISSED WITH PREJUDICE ON ABSOLUTE IMMUNITY GROUNDS** as against Defendant District Attorney Soares, **EXCEPT** as to Plaintiff's claim that Soares implemented a blanket policy allowing police misconduct claim, which the Court recommends be **DISMISSED WITH PREJUDICE** for failure to state a claim despite Plaintiff having been given two opportunities to do so; and it is further

**RECOMMENDED** that the amended complaint (Dkt. No. 13-1) be **DISMISSED WITH PREJUDICE** against Defendant Albany County; and it is further

**RECOMMENDED** that the action be allowed to proceed against Defendants Martin, Seward, Korkoff, and the City of Albany, and that Defendants, or their counsel, be required to file a response as provided for in Rule 12 of the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the Clerk of the

---

[7] If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated:  January 5, 2017
      Syracuse, New York

                                   Thérèse Wiley Dancks
                                   United States Magistrate Judge

---

mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2016 WL 6962516
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Giuseppe D'Alessandro, Plaintiff,

v.

City of New York et al., Defendant.

13-CV-930 (SLT)
|
Signed 11/22/2016
|
Filed 11/28/2016

**Attorneys and Law Firms**

Brian Lee Gardner, Cole Schotz Meisel Forman &
Leonard P.A., New York, NY, for Plaintiff.

Arthur G. Larkin, NYC Office of Corporation Counsel,
Elizabeth N. Krasnow, Patricia Jean Bailey, New York,
NY, for Defendant.

**Memorandum and Order**

SANDRA L. TOWNES, United States District Judge

**\*1** After serving fourteen and a half years of a fifteen
year sentence for kidnapping, Giuseppe D'Alessandro's
conviction was overturned by the New York Supreme
Court, Appellate Division, First Department on statutory
speedy trial grounds. D'Alessandro commenced this
action under 42 U.S.C. § 1983, alleging that he was
wrongfully convicted as a result of various deprivations
of his constitutional rights by the Manhattan District
Attorney's Office, former District Attorney Robert M.
Morgenthau, former Assistant District Attorney Brenda
Morris, New York Police Department Detective Anthony
Vazquez, and the City of New York (the "City").
Currently before the Court are motions by the City
on behalf of itself and Detective Vazquez and by the
defendants, the District Attorney's Office on behalf of
defendants Morgenthau and Morris (together the "DA
Defendants") to dismiss the complaint for failure to state
a claim, and a Federal Rules of Civil Procedural Rule 11
motion for sanctions by the City against D'Alessandro's
counsel. For the following reasons, all of D'Alessandro's
claims are dismissed and the City's motion for sanctions
is denied.

**LEGAL STANDARD**

Under the now well-established *Twombly* standard, a
complaint should be dismissed only if it does not contain
enough allegations of fact to state a claim for relief that
is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009). "While a complaint attacked by a
Rule 12(b)(6) motion to dismiss does not need detailed
factual allegations, a plaintiff's obligation to provide the
grounds of his entitlement to relief requires more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Twombly*, 550
U.S. at 555 (alteration, citations, and internal quotation
marks omitted). While Federal Rule of Civil Procedure
8 "marks a notable and generous departure from the
hyper-technical, code-pleading regime of a prior era, ...
it does not unlock the doors of discovery for a plaintiff
armed with nothing more than conclusions." *Iqbal*, 556
U.S. at 678-79. The Supreme Court has clarified that
*Twombly* sets out a two-pronged approach for district
courts considering motions to dismiss under Rule 12(b)
(6). *Id.* District courts should first "identify[ ] pleadings
that, because they are no more than conclusions, are not
entitled to the assumption of truth," and second, if a
complaint contains "well-pleaded factual allegations, a
court should assume their veracity and then determine
whether they plausibly give rise to an entitlement to
relief." *Id.* at 679. The Court is generally limited to the
"facts stated in the complaint or documents attached to
the complaint as exhibits or incorporated by reference."
*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100
(2d Cir. 2005). It may also consider "matters of which
judicial notice may be taken, or ... documents either in
plaintiff[']s[ ] possession or of which plaintiff [ ] had
knowledge and relied on in bringing suit." *Brass v. Am.
Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)
(citation omitted); *Chambers v. Time Warner, Inc.*, 282
F.3d 147, 153 (2d Cir. 2002).

## FACTUAL BACKGROUND

**\*2** With this standard in mind, the following facts, which are drawn from D'Alessandro's amended complaint, are deemed true for purposes of the motions to dismiss.

### *Alleged Underlying Crime*

In 1989, D'Alessandro worked as a manager of a restaurant. (Compl. ¶ 13.) After a "heated argument" with an employee suspected of stealing $3,000 from the restaurant, the employee accused D'Alessandro of confining him to the restaurant's basement for over twelve hours and seeking return of the $3,000. (*Id.*) D'Alessandro denied that he ever confined the employee to the basement. (*Id.*)

### *Indictment and Superseding Indictment*

In August 1989, D'Alessandro was arrested on charges of kidnapping and prosecuted by the New York County District Attorney's Office, led, at the time, by Defendant Morgenthau. (Compl. ¶¶ 13-14.) In October 1989, Assistant District Attorney Brenda Morris ("ADA Morris"), who was assigned to prosecute the case, presented the case to the grand jury. (*Id.*) On November 3, 1989, ADA Morris "entered into the court files that a true bill was returned, indicting Plaintiff for kidnapping in the second degree and related offenses," although "a signed copy of the indictment was never filed with the court and does not exist anywhere in the Queens [1] [*sic*] County court system or the District Attorney's office." (Compl. ¶ 14.) D'Alessandro alleges that "[t]here is no, and never was any, formal evidence of a true bill voted against D'Alessandro in 1989." (*Id.*)

The prosecution made a plea offer to D'Alessandro, which provided that D'Alessandro would receive only probation in exchange for a plea of guilty, however D'Alessandro, maintaining his innocence, rejected the offer. (Compl. ¶ 15.) ADA Morris resubmitted the case to a new grand jury and obtained a superseding indictment which included a count of kidnapping in the first degree – a charge that carries a mandatory minimum sentence of 15 years to life. (*Id.*)

### *Speedy Trial Motion*

D'Alessandro's counsel moved, in a pre-trial motion dated September 13, 1990, to dismiss the superseding indictment on the grounds that statutory speedy trial time pursuant to New York Criminal Procedure Law ("CPL") § 30.30 had run out. (Compl. ¶ 16.) D'Alessandro argued that, among other things, all of the time from arrest to trial should be charged to the People because they never produced grand jury minutes. The trial court denied the motion in a January 7, 1991 decision, in part relying on a representation from ADA Morris that the 196 day delay in providing the grand jury minutes to D'Alessandro's counsel was excludable. (Compl. ¶¶ 16-17.) In fact, eight months earlier, on May 8, 1990, the New York Court of Appeals had decided the case of *People v. McKenna*, in which it held that "the People's [delay in] provid[ing] the Grand Jury minutes ... is a delay that should be counted against them in determining whether their [statutory speedy trial] obligation[s] under CPL 30.30 has been satisfied." 76 N.Y.2d 59, 66 (1990).

### *Trial, Sentencing, and Direct Appeal*

On June 25, 1991, a guilty verdict was entered in New York State Supreme Court, County of New York, following a jury trial. (Compl. ¶ 18.) However, the trial court granted D'Alessandro's motion pursuant to CPL § 330.30, to set aside the verdict, on the grounds of prosecutorial misconduct in the summation. (*Id.*)

**\*3** The District Attorney's Office appealed, and on December 22, 1993, the New York Supreme Court, Appellate Division, First Department, reversed the trial court and reinstated the jury's verdict. *People v. D'Alessandro*, 184 A.D.2d 114, 591 N.Y.S.2d 1001 (App. Div. 1st Dep't 1992). The First Department explained that the prosecutor "on occasion did exceed the bounds of legitimate fair comment as when, for example, she suggested that a witness might be exposing himself to danger by testifying, appealed to the jurors' generalized fear of crime, and their sympathies, and vouched for the credibility of the People's witnesses." *Id.* (citations omitted). However, the Appellate Division concluded that the summation "was within the range of acceptability, and it cannot be reasonably found that [the prosecutor] tried to depict defendant as a mobster who merited punishment for his general character and intimidation of witnesses rather than for the specific crimes with which he was charged." *Id.* Because the First Department found the proof of guilt "overwhelming," it concluded that any

misconduct was harmless and reversed the trial court's order granting the motion to vacate the conviction. *Id.*

On April 20, 1993, D'Alessandro was sentenced to the minimum of fifteen years in prison. (Compl. ¶ 19.) According to D'Alessandro, the sentencing judge "expressed its belief that the sentence was overly harsh, but that it was constrained by the statutory mandatory minimum sentence." (*Id.*)

On August 22, 1996, the Appellate Division affirmed D'Alessandro's conviction on direct appeal, finding that the evidence was "overwhelming," any prosecutorial misconduct was harmless error, and the jury's determination as to fact and credibility were supported by the record. *People v. D'Alessandro*, 230 A.D.2d 656, 656-57 (N.Y. App. Div. 1st Dep't 1996). The Appellate Division further found that D'Alessandro's challenges to the jury instructions were unpreserved, and that the:

> available record indicates that defendant received the effective assistance of counsel, trial counsel having made appropriate pre-trial, trial and post-trial motions and applications, vigorously cross-examined the People's witness and presented witnesses in support of the defense position that there had been no abduction or restraint of the complainant, and interposed numerous objections to summation comments by the prosecutor. Trial counsel's failure to object to the jury charge on kidnaping in the first degree, which in any event does not constitute reversible error in the circumstances, does not render trial counsel's representation less than meaningful.

*Id.* The New York Court of Appeals denied leave to appeal on November 29, 1996. *People v. D'Alessandro*, 89 N.Y.2d 863 (1996).

### Writ of Error Coram Nobis, Parole, and Writ of Habeas Corpus

D'Alessandro filed a *pro se* petition for a *writ of error coram nobis* asserting ineffective assistance of appellate

counsel in connection with D'Alessandro's statutory speedy trial rights in August 1999, which the Appellate Division denied on May 11, 2000. *People v. D'Alessandro*, 272 A.D.2d 1002, 2000 WL 1110871 (N.Y. App. Div. 1st Dep't 2000). D'Alessandro filed a second petition for a *writ of error coram nobis* on June 27, 2008, raising a slightly different statutory speedy trial based ineffective assistance of appellate counsel argument. That petition was construed as a motion for reargument and denied by the Appellate Division on August 19, 2008, *People v. D'Alessandro*, 2008 NY Slip Op 80474 [u] (N.Y. App. Div. 1st Dep't Aug. 19 2008), however the New York Court of Appeals reversed on October 27, 2009, after finding that the petition raised different grounds than D'Alessandro's initial *pro se* application and remanded to the Appellate Division to consider the application on the merits, *People v. D'Alessandro*, 13 N.Y.3d 216, 218, 918 N.E.2d 126 (2009). On remand, in an unpublished opinion dated June 29, 2010, Appellate Division granted the petition for a *writ of error coram nobis. People v. D'Alessandro*, 2010 NY Slip Op 75591(U) (N.Y. App. Div. 1st Dep't June 29, 2010). The Appellate Division vacated D'Alessandro's conviction and dismissed the indictment on the grounds that appellate counsel was ineffective on his direct appeal of the conviction for failing to raise the "clear-cut and completely dispositive" statutory speedy trial argument. The District Attorney's application for leave to appeal was denied by the Court of Appeals on September 29, 2010. *People v. D'Alessandro*, 2010 NY Slip Op 98765(U) (N.Y. Sept. 29, 2010).

**\*4** In November 2007, D'Alessandro was released on parole after serving 14 and a half years of his sentence. (Compl. ¶ 20.) Because he was not a citizen, following his release, he was detained by the Department of Homeland Security and remained in federal custody until his release was obtained by way of a petition for a writ of habeas corpus on April 3, 2009. *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 372 (W.D.N.Y. 2009).

### Instant Civil Case

D'Alessandro commenced the instant action on February 21, 2013, pursuant to 18 U.S.C. § 1983. D'Alessandro alleges that his rights were violated by DA Defendants and the City because they failed "to maintain an adequate system ... by which controlling developments in appellate law [would be] distributed to assistant district attorneys" and maintained a policy of deliberate indifference to the unconstitutional "tactics" of the assistant district

attorneys. (Amd. Compl. ¶¶ 25-36). He alleges that ADA Morris's conduct in "proceeding with an illegal investigation of the Plaintiff ..., despite the fact that a signed indictment containing such charge was never obtained," "refus[ing] to disclose grand jury minutes to the trial court, for hundreds of days, in an attempt to ... exert undue influence to accept the offered plea," obtaining a superseding indictment as "retribution against the Plaintiff ... [for] failure to plead to the initial (false) charges," hiding unspecified exculpatory evidence, and "procuring and facilitating false witness statements ... while failing to reveal and investigate the witnesses and their actual and true statements" were examples of such unconstitutional tactics. *Id.* Further, he alleges that the District Attorney and City negligently retained, hired, and supervised ADA Morris, and failed to intervene in the misconduct of the DA Defendants and Detective Valquez. (Amd. Compl. ¶¶ 37-45, 60-73). D'Alessandro alleges that ADA Morris and Detective Vazquez violated his rights by conducting "a wholly improper investigation" when they "failed to reveal and investigate exculpatory evidence including witnesses who were present at the time and location where the complainant was allegedly held, but did not see him at that location." (Amd. Compl. ¶¶ 46-59.)

### DISCUSSION

#### *Absolute Prosecutorial Immunity Bars Claims Against the DA Defendants in their Individual Capacities*

The DA Defendants move to dismiss claims brought against them in their individual capacities on the grounds that such claims are barred by the doctrine of absolute prosecutorial immunity.

Absolute prosecutorial immunity immunizes district attorneys acting in their individual capacities from claims arising out of the manner "in which [they] performed [their] role as an advocate by initiating and pursing a criminal prosecution." *Covington v. City of New York*, No. 98 Civ. 1285(MGC), 1999 WL 739910, at *7 (S.D.N.Y. Sept. 22, 1999). Prosecutorial immunity is so broadly defined that "virtually all acts, regardless of motivation, associated with the function as an advocate" will be accorded absolute immunity. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotation marks and citations omitted). In determining whether absolute immunity is available, this Court applies a "functional

approach" and looks to the "nature of the function performed" by the prosecutor defendants. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). If the conduct is "intimately associated with the judicial phase of the criminal process," the prosecutor defendants are entitled to absolute prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976). Conversely, immunity is not available for "those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings," *Hill*, 45 F.3d at 661 (citing *Buckley*, 509 U.S. at 270), or where the prosecutor's acts are "manifestly or palpably beyond his authority," *Spalding v. Vilas*, 161 U.S. 483, 498 (1896), or where he "proceeds in the clear absence of all jurisdiction," *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987).

**\*5** All of D'Alessandro's claims against the DA Defendants in their individual capacities arise out of the DA Defendants' prosecutorial actions. D'Alessandro's claims that ADA Morris conducted an improper investigation during the prosecution, failed to turn over exculpatory evidence, misinformed the trial judge about the law, failed to promptly turn over grand jury minutes, and pursued a superseding indictment are barred by absolute immunity because such conduct is "prosecutorial." *Buckley*, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial ... are entitled to the protections of absolute immunity ... [including investigating evidence] after a decision to seek an indictment has been made."); *Jones v. City of New York*, 988 F. Supp. 2d 305, 312 (E.D.N.Y. 2013) (decisions about investigation, disclosure and use of information, and to continue prosecuting plaintiff "were exercises of legal judgment undertaken in preparation for trial."); *Robinson v. Rome*, No. 11-CV-1411 NGG LB, 2011 WL 1541044, at *3 (E.D.N.Y. Apr. 20, 2011) (ADA's alleged failure to sufficiently investigate the case, failure to turn over exculpatory evidence, and decisions to rely on false evidence are " 'prosecutorial' – as opposed to 'investigative' – in nature."); *Kuar v. Mawn*, No. 08-CV-4401 JFBETB, 2011 WL 838911, at *5 (E.D.N.Y. Mar. 4, 2011) ("suborning perjury, falsifying evidence, destroying and withholding exculpatory evidence, and coercing plaintiff's plea" "all occurred in the course of [the prosecutor's] role as an advocate and fall squarely within the scope of absolute immunity.").

D'Alessandro argues, relying on *Harris v. Muchnicki*, that ADA Morris's failure to turn over grand jury minutes was "administrative." 101 F.3d 702 (6th Cir. 1996) (unpublished). However, D'Alessandro misconstrues *Harris*. In *Harris*, the Sixth Circuit affirmed, on other grounds, a district court's decision dismissing, as barred by prosecutorial immunity, claims against an Ohio assistant attorney general who released grand jury minutes to a *federal* agency that was conducting its own investigation into the plaintiff. *Id.* at *2. The Sixth Circuit did not reach the question of whether prosecutorial immunity attached because, more fundamentally, the plaintiff failed to state any claim under § 1983, because the release of grand jury minutes under the circumstances of that case did not violate any federal constitutional rights. *Id.* Rather, it is clear that a prosecutor's delay in turning over discovery materials is protected by prosecutorial immunity. *Hill*, 45 F.3d at 662 (A prosecutor's failure to turn over material as required by *Brady, v. Maryland*, 373 U.S. 83 (1963), is protected by absolute immunity because such an "omission occur[s] after the prosecutorial phase of the case had begun and therefore is protected as a discretionary advocacy function."); *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (prosecutors are entitled to immunity for "administrative obligation[s] ... that [are] directly connected with the conduct of a trial ... unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like."); *Jones*, 988 F. Supp. 2d at 317 ("Tasks directly connected with the prosecutor's basic trial advocacy and prosecutorial duties—including *Brady* decisions—should ... be treated as 'prosecutorial conduct.' "); *Mistretta v. City of New York*, No. 98-CV-2589 (ILG), 1999 WL 1129618, at *5 (E.D.N.Y. Oct. 15, 1999) (prosecutors are "entitled to absolute immunity from suit" for "failure to disclose exculpatory evidence").

Likewise, D'Alessandro's failure to train and deliberate indifference claims against DA Morgenthau are prosecutorial in nature. In *Van de Kamp*, the Supreme Court extended prosecutorial immunity to certain administrative tasks, such as "supervision or training or information-system management" because these kinds of "administrative obligation[s] ... [are] directly connected with the conduct of a trial." 555 U.S. at 344. The Court distinguished administrative obligations such as "workplace hiring, payroll administration, the maintenance of physical facilities, and the like,"

which are not subject to prosecutorial immunity, from administrative activities that "necessarily require legal knowledge and the exercise of related discretion, *e.g.,* in determining what information should be included in the training or the supervision or the information-system management." *Id.* In the latter cases, the Court reasoned it would be anomalous for an assistant prosecutor to be immune for the actual prosecutorial error, while his or her supervisor would be held liable for failing to adequately train and supervise. *Id.* at 345. D'Alessandro's claims against DA Morgenthau are predicated on his alleged failure to train his assistants on emerging legal issues and his alleged countenancing or even encouraging overzealous prosecutions. Accordingly, under *Van de Kamp*, DA Morgenthau is shielded from such claims because although they center on his "administrative" obligations, they are of a prosecutorial nature. Given that all of D'Alessandro's individual capacity claims against DA Defendants arise out of their prosecutorial actions, DA Defendants are shrouded from D'Alessandro's claims by the cloak of prosecutorial immunity.

**\*6** D'Alessandro argues that DA Defendants are not entitled to *any* prosecutorial immunity because ADA Morris acted "in the clear absence of all jurisdiction." He speculates that because "a signed copy of the indictment was never filed with the court," there was never a "true bill" returned by the grand jury. (Compl. ¶ 14.) Thus, he argues that prosecutorial immunity never attached because there was never jurisdiction to prosecute. Even assuming that no signed copy of the indictment was ever filed, D'Alessandro is mistaken that prosecutorial immunity did not attach.

Prosecutors are absolutely immune from § 1983 liability where "they have at least a semblance of jurisdiction." *Barr*, 810 F.2d at 361. The Second Circuit has explained that "holding that a prosecutor is without absolute immunity the moment he strays beyond his jurisdictional limits[ ] would do violence to [the] spirit [of prosecutorial immunity, t]he purpose of [which] is to give to public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities." *Id.* "In determining whether the prosecutor should ... be denied absolute immunity in a specific case, [courts] look to the statutes that might have authorized the prosecution, and deny absolute immunity if there was no colorable authority." *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (internal citation omitted).

Here, "New York Criminal Procedure Law clearly provides the jurisdictional authority for the District Attorney to seek plaintiff's indictment," *Smith v. Gribetz*, 958 F. Supp. 145, 153 (S.D.N.Y. 1997) (citing N.Y. Crim. Proc. Law § 190). Article 190 of the New York Criminal Procedure Law governs grand juries, and subsection 190.55 provides that a "district attorney *must* submit to a grand jury evidence concerning a felony allegedly committed by a defendant," where a felony complaint has been filed. N.Y. Crim. Proc. Law § 190.55. "New York Penal law, as cited in the indictment, [*inter alia*, N.Y. Penal Law § 135.20, which criminalizes kidnapping,] furnishes the substantive basis for the charges against [D'Alessandro]." *Smith*, 958 F. Supp. at 153 (S.D.N.Y. 1997) (rejecting the contention that a District Attorney did not have prosecutorial immunity where he allegedly prosecuted the plaintiff for "noncriminal activities," where the state's laws furnished the basis for the charges in the indictment.) Given that the DA Defendants had authority to prosecute D'Alessandro for kidnapping under the New York Penal Law, there is no basis to conclude that they acted "in the absence of all jurisdiction." Accordingly, his individual capacity claims against DA Defendants are dismissed as barred by absolute prosecutorial immunity.

### The Eleventh Amendment Bars Claims against DA Defendants in their Official Capacities

It is well-settled that claims against a state or municipal official in his official capacity are to be treated as claims against the respective state or municipality. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* Generally, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and "*not* a suit against the official personally." *Id.* at 166 (emphasis in original).

The Eleventh Amendment, which recognizes the States' sovereign immunity, protects the States from suits in federal courts unless they have waived their sovereign immunity or Congress has abrogated that immunity pursuant to Section 5 of the Fourteenth Amendment. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). However, the immunity does not extend to municipalities, such as New York City, which are political subdivisions and may be sued for deprivations of federal rights. *Id.*; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 &n.54 (1978).

**\*7** It has long been recognized that "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quotation marks and citation omitted). "With respect, however, to claims centering ... on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned." *Id.* "Where, as to such administrative matters, the district attorney acts as 'manager' of the District Attorney's office of one of New York City's constituent counties, he may be considered a municipal policymaker for the City of New York." *Id.*

Accordingly, Eleventh Amendment immunity extends to DA Morgenthau and ADA Morris, to the extent they are sued in their official capacity for their prosecutorial decisions – including ADA Morris's decisions to prosecute plaintiff, seek and obtain a superseding indictment, investigate the complainant's claims, turn over grand jury minutes, and make specific arguments to the trial court, and DA Morgenthau's decision to train or not train assistant district attorneys about recent precedent. To the extent that any official capacity claims against the DA Defendants are not barred by the Eleventh Immunity, those claims are construed as claims against the municipality and analyzed below.

### False Arrest Claims against Detective Vazquez are Dismissed because Detective Vazquez Acted with Probable Cause

D'Alessandro alleges that Detective Vazquez arrested him without probable cause. According to the amended complaint, Detective Vazquez arrested D'Alessandro on the word of the alleged victim of the kidnapping without first performing an adequate investigation into two delivery persons who visited the restaurant's basement on the day in question and allegedly did not see the complainant tied up.

Although D'Alessandro does not articulate under precisely what theory Detective Vazquez deprived him of his constitutional rights, he appears to be making a false arrest claim. However, "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* at 119 (citations and internal quotation marks omitted). Detective Vazquez arrested D'Alessandro based on a statement given by the complainant – the alleged victim of a kidnapping. It is well settled that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest" *Id.*

Generally, "[t]he veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992). D'Alessandro asserts, citing *Brodie v. Fuhrman*, that a complainant's statement, alone, cannot support probable cause if "there was a relationship – in this case work relationship –between the Plaintiff and his accuser." (Opp'n Br. to City Mtn. at 21) (quoting *Brodie v. Fuhrman*, 07-cv-4212 (DGT) (VVP), Dkt No. 49 at *15-17 (E.D.N.Y. March 29, 2010) (finding probable cause to arrest accused based on victim statement despite antagonistic relationship between accuser and accused.)) However, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Although "[t]here are circumstances ... when a victim's veracity can be called into question," *Singer*, 63 F.3d at 119, for example, where there is "a prior relationship between the victim and the accused that *gives rise to a motive for a false accusation ...* and [this relationship] is known to the arresting officer," *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) (emphasis added), the mere fact that accused and accuser know each other does not necessarily cast doubt on an alleged victim's complaint. *See also Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 437 (S.D.N.Y. 2014) (finding that the fact that the complainant and plaintiff were in the process of divorcing did not raise the specter

of false claims, but rather lent credibility to the victim's allegations that his wife threatened him). Indeed, often, the fact that the accused and accuser know each other cuts the other way, by adding credibility to the identification. *See, e.g., Hanniford v. City of New York*, No. 12-CV-0040 PKC SMG, 2014 WL 7801320, at *5 (E.D.N.Y. Dec. 23, 2014) *R&R adopted*, 2015 WL 588766 (E.D.N.Y. Feb. 11, 2015) ("Prior familiarity with a suspect may in fact be a compelling factor contributing to the reliability of an identification.").

**\*8** Here, there was no reason for Detective Vazquez to believe – based solely on the fact that the complainant worked with D'Alessandro – that the complainant had any motive to falsely accuse D'Alessandro. Indeed, D'Alessandro does not allege that he and the complainant had an acrimonious relationship before he accused the complainant of stealing money from the register and the complainant, in turn, accused him of binding and threatening him in the basement.

D'Alessandro further alleges that Vazquez knew of these two delivery persons and failed to investigate further. [2] However, Detective Vazquez was "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Caldarola v. Calabrese*, 298 F.3d 156, 167-68 (2d Cir. 2002); *see Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."). Indeed, "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)). Thus, Detective Vazquez had probable cause to arrest D'Alessandro and, accordingly, D'Alessandro's § 1983 false arrest claims against Detective Vazquez are denied. [3]

### Claims Against the City are Dismissed Because Plaintiff has Failed to Allege a Municipal Policy or Practice

A municipality and its supervisory officials may not be held liable under section 1983 for the isolated

unconstitutional acts of its employees based solely on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (recognizing that municipal liability attaches to individual policymakers "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered"). Rather, to establish a section 1983 claim, D'Alessandro must demonstrate that the constitutional harm he suffered was the result of an official municipal policy or custom. *Monell*, 436 U.S. at 690-691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). As the Supreme Court stated in *Connick*, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Id.* at 1359. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* To prevail on a failure-to-train theory, the plaintiff must show that the failure amounted to the policymaker's "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989) (alteration in *Connick*)). Ordinarily, to prevail on such a theory, the plaintiff must prove "[a] pattern of similar constitutional violations by untrained employees" that put decisionmakers on notice. *Id.* at 1360. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Alternatively, "in a narrow range of circumstances" such a claim can be proven under a 'single incident' theory, if there is "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an *obvious* potential for such a violation." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997) (emphasis added). 'Single incident' liability only applies if a violation of constitutional rights is a " 'highly predictable consequence' " and the need for training is "patently obvious." *Connick*, 131 S. Ct. at 1361 (quoting *Bryan Cnty*, 520 U.S. at 409).

**\*9** To the extent that any of D'Alessandro's claims against individual defendants in their official capacities

are not barred by the Eleventh Amendment, those claims are treated as claims against the municipality and are considered alongside D'Alessandro's claims against the City for failure to train assistant district attorneys on their legal obligations and for deliberate indifference to the rights of criminal defendants.

D'Alessandro fails to show a pattern of similar violations. In *Connick*-a case in which the plaintiff's conviction was overturned after it was revealed that prosecutors had withheld exculpatory *Brady* material – the plaintiff attempted to meet his burden of identifying a pattern of *Brady* violations by pointing to four earlier convictions that had been overturned due to *Brady* violations. However, the Supreme Court found that those incidents were not sufficiently similar to the violation at issue to put the District Attorney on notice that specific training was necessary. Here, D'Alessandro cites, without explanation, numerous cases brought against the Manhattan District Attorney's Office around the same time as D'Alessandro's trial and conviction. (Opp'n Br. to City Mtn. at 8). However, none of the cases decided before D'Alessandro's June 1991 conviction involved facts even remotely similar to the case at bar, such that they would have put the District Attorney on notice that there was a need to train assistant district attorneys. *See Connick*, 131 S. Ct. at 1360 n.7 (explaining that "contemporaneous or subsequent conduct cannot establish a pattern of violations"). [4] To the extent they are even relevant, [5] the cases cited by D'Alessandro involve inflammatory or otherwise improper statements made by prosecutors during trial, typically during summation, [6] failures to turn over exculpatory evidence, [7] and impermissible trial preparation tactics. [8] None of the cases cited by D'Alessandro involved prosecutors citing to overturned law, "proceeding with an illegal investigation ... despite the fact that a signed indictment containing such charge was never obtained," "refus[ing] to disclose grand jury minutes to the trial court, for hundreds of days, in an attempt to ... exert undue influence to accept the offered plea," obtaining a superseding indictment as "retribution ... [for] failure to plead to the initial (false) charges," hiding unspecified exculpatory evidence, or "procuring and facilitating false witness statements ... while failing to reveal and investigate the witnesses and their actual and true statements." (Amd. Compl. ¶¶ 25-36). Thus, D'Alessandro has failed to show a pattern of practice as required to state a failure to train claim against the City.

**\*10** Moreover, D'Alessandro's "single-incident" theory of liability is foreclosed by *Connick*. The *Connick* Court concluded that because all lawyers, including prosecutors, are presumptively able to "apply legal principles, understand constitutional limits, and exercise legal judgment," and "[i]n light of [their] legal training and professional responsibility, recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law." *Id.* at 1361-63. Thus, there could be no liability under a "single-incident" theory for failing to train prosecutors to comply with their obligations to turn over material exculpatory to the defense, as required by *Brady v. Maryland. Id.* ("Failure to train prosecutors in their *Brady* obligations does not fall within the narrow range of *Canton*'s hypothesized single-incident liability."). So too here, in light of the training lawyers undergo and their ethical obligations, it is not an "obvious consequence" of a district attorney's failure to provide additional training that assistant prosecutors will argue in favor of a law that has been overturned. *Id.*; *see also Robinson*, 2011 WL 1541044, at \*3-4.

### The City's Motion for Rule 11 Sanctions is Denied

The City moves for sanctions against D'Alessandro under Rule 11 of the Federal Rules of Civil Procedure on the theory that D'Alessandro's claims are frivolous and his factual contention that no indictment was returned is belied by circumstantial evidence suggesting that a true bill was returned by a New York grand jury on November 3, 1989. (Krasnow Decl., Exs. E, F, H.)

Under Federal Rule of Civil Procedure 11, a court may impose appropriate sanctions on "any attorney, law firm, or party that violated" Rule 11(b) or is responsible for the violation. Rule 11(b) provides that:

By presenting to the court a pleading, written motion, or other paper –whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

**(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "The mental state applicable to liability for Rule 11 sanctions initiated by motion is objective unreasonableness." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003).

Given that the City seeks dismissal as a sanction, the motion is largely moot. To the extent the City also seeks costs, it has failed to show that sanctions are warranted. D'Alessandro speculates that there was no true bill returned merely because, over twenty years later, a copy cannot be found in the court files. Although his theory is contradicted by some circumstantial evidence, it cannot be said that his position is "objectively unreasonable." Thus, the City's motion for sanctions is denied.

### CONCLUSION

The motions to dismiss filed by the DA Defendants and the City of New York are granted. The City of New York's motion for sanctions is denied. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED**

**All Citations**

Slip Copy, 2016 WL 6962516

Footnotes

1    Presumably, this is a typographical error. D'Alessandro was prosecuted in Manhattan, in New York County, not in Queens County.

2    In a conclusory fashion, the complaint also alleges that the police suppressed the deliverymen's identities, however this assertions is belied by the record before the Court. In its 2010 decision, the Appellate Division recited that the "[t]wo deliverymen testified[, for the defense,] that they went down to the basement on the day in question and did not see [the complainant.]" *D'Alessandro*, 2010 NY Slip Op 75591(U), at *2.

3    To the extent D'Alessandro is alleging a malicious prosecution claim, such a claim would also fail because there was probable cause to arrest and D'Alessandro does not allege any subsequent intervening facts. *See Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (recognizing probable cause as a complete defense to a claim of malicious prosecution); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (to state a malicious prosecution claim, the groundless nature of the charges must be made apparent by the discovery of some intervening fact [after a lawful arrest]."). Moreover, "arresting officers generally are not subject to liability for malicious prosecution because the ultimate decision to prosecute rests with the prosecutor." *Nickey v. City of New York*, No. 11-CV-3207 RRM RLM, 2013 WL 5447510, at *8 (E.D.N.Y. Sept. 27, 2013) (*citing Myers v. Cnty. of Nassau*, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011)).

4    In any event, none of the cases that post-date D'Alessandro's conviction are factually similar to the case at bar. *See People v. Colas*, 206 A.D.2d 183, 190 (N.Y. App. Div. 1st Dep't 1994) (a new trial was ordered because of "cumulative effect" of introduction of evidence of uncharged crimes and flawed identification procedures); *People v. Jarrells*, 190 A.D.2d 120, 126 (N.Y. App. Div. 1st Dep't 1993) (prosecutor improperly impeached defendant on cross-examination and failed to turn over a police voucher undermining the defense's ability to cross-examine the officer); *People v. Williams*, 7 N.Y.3d 15, 19 (N.Y. App. Div. 1st Dep't 2006) (affirming defendant's conviction after concluding that prosecutor's failure to timely disclose that a government witness was being investigated for perjury did not require more than limited reopening of a suppression hearing); *People v. Tolbert*, 198 A.D.2d 132, 133 (N.Y. App. Div. 1st Dep't 1993) (prosecutor made improper statements in summation).

5    *People v. Coates*, 74 N.Y.2d 244, 249 (N.Y. App. Div. 1st Dep't 1989) (because defendant's right to counsel was violated at a line-up conducted by police officers requiring a new trial, the court did not reach claims of prosecutorial misconduct); *People v. Ortiz*, 33 A.D.3d 1044 (N.Y. App. Div. 3d Dep't 2006) (prosecution by Schenectady District Attorney).

6    *People v. Norton*, 164 A.D.2d 343, 356 (N.Y. App. Div. 1st Dep't 1990) (prosecutor improperly referred to alleged threats by defendant suggesting defendant caused victim's absence, where victim did not testify because he invoked his right against self-incrimination); *People v. Hansen*, 141 A.D.2d 417, 420 (N.Y. App. Div. 1st Dep't 1988) (prosecutor made repeated inflammatory comments in summation); *People v. Jimenez*, 102 A.D.2d 439, 444 (N.Y. App. Div. 1st Dep't 1984) (prosecutor made comments about improperly admitted evidence in summation); *People v. Vann*, 54 A.D.2d 356, 365 (N.Y. App. Div. 1st Dep't 1976) (prosecutor made improper comments about meeting with defendant in summation thereby making himself an unsworn witness); *People v. Dowdell*, 88 A.D.2d 239, 248 (N.Y. App. Div. 1st Dep't 1982) (prosecutor violated a court order on cross-examination, elicited hearsay, and vouched for police officer witnesses' credibility in summation); *People v. Ortiz*, 51 A.D.2d 710, 710 (N.Y. App. Div. 1st Dep't 1976) (prosecutor improperly referred to a defense counsel error in summation); *People v. Abdul-Malik*, 61 A.D.2d 657, 663-64 (N.Y. App. Div. 1st Dep't 1978) (prosecutor made prejudicial remarks in summation which drew attention to the fact that defendant had not taken the stand and made other remarks that amounted to impermissible buttressing); *People v. Bolden*, 82 A.D.2d 757, 757 (N.Y. App. Div. 1st Dep't 1981) (prosecutor made numerous errors during trial, including during an overly zealous cross-examination of defendant and in summation); *People v. Rivera*, 75 A.D.2d 544, 545, 426 N.Y.S.2d 785, 786 (N.Y. App. Div. 1st Dep't 1980) (prosecutor gave impermissibly inflammatory summation); *People v. Bendell*, 111 A.D.2d 87 (N.Y. App. Div. 1st Dep't 1985) *rev'd*, 67 N.Y.2d 724 (1986) (First Department's finding that prosecutor became an unsworn witness and placed his own veracity at issue in redirect and summation, and overreached in cross-examination was reversed by Court of Appeals on the grounds that prosecutor's statements were harmless and cross-examination was proper).

7    *People v. Jones*, 128 A.D.2d 405, 406 (N.Y. App. Div. 1st Dep't 1987) (prosecutor failed to disclose certain documents in violation of state law); *People v. Taylor*, 160 A.D.2d 556, 557 (N.Y. App. Div. 1st Dep't 1990) (prosecutor's failure to timely disclose witnesses was not prejudicial because, *inter alia*, two of the four witnesses nevertheless testified); *People v. Jackson*, 237 A.D.2d 179, 180, 655 N.Y.S.2d 17 (N.Y. App. Div. 1st Dep't 1997) (prosecutor failed to turn over internal affairs documents); *People v. Wallert*, 98 A.D.2d 47, 47-48 (N.Y. App. Div. 1st Dep't 1983) (prosecutor knew but failed to disclose that the victim who testified against the defendant was awaiting the outcome of the criminal action to file a civil action against the defendant); *People v. Davis*, 81 N.Y.2d 281, 614 N.E.2d 719 (N.Y. App. Div. 1st Dep't 1993) (prosecutor failed to disclose that the victim misidentified an alleged co-perpetrator); *People v. Ramos*, 141 Misc. 2d 930, 938-39, 535 N.Y.S.2d 663, 669 (N.Y. Co. Sup. Ct. 1988) (prosecutor's delay in providing grand jury minutes did not require mistrial).

8     *People v. Arocho*, 85 Misc. 2d 116, 118, 379 N.Y.S.2d 366, 368 (N.Y. Co. Sup. Ct. 1976) (holding that prosecutor who served improper subpoenas on witnesses is barred from using statements obtained at resulting interviews at trial);

---

**End of Document**     © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 6667681
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Barry MAYNARD, Plaintiff,
v.
CITY OF NEW YORK; Richard J. Condon, Special
Commissioner of Investigation for the New York
City School District; New York City Department
of Education; Dennis Walcott, Chancellor of the
New York City Department of Education; Lisa
Luft, individually and in her official capacity as
Principal; Nicholas Rose–Meyer, individually and
in his official capacity as Investigator; Defendants.

No. 13 Civ. 3412(CM).
|
Dec. 17, 2013.

## DECISION AND ORDER

McMAHON, District Judge.

## Introduction

**\*1** Plaintiff Barry **Maynard** ("Plaintiff") brings this
action against defendants the **City** **of** **New** **York**
("City"), the New York City Department of Education
("DOE"), Special Commissioner of Investigation Richard
J. Condon ("Condon"), DOE Chancellor Dennis Walcott
("Walcott"), School Principal Lisa Luft, individually
and in her official capacity ("Luft"), and Investigator
Nicholas Rose–Meyer of the DOE Office of Special
Investigations, individually and in his official capacity
("Rose–Meyer" and collectively the "Defendants").
Plaintiff, a former paraprofessional at DOE alleges that
Defendants discriminated against him based on his race in
violation of the Equal Protection Clause of the Fourteenth
Amendment, 42 U.S.C. §§ 1981 and 1983, by firing him
after he was accused of improper conduct with female
students. Defendants move to dismiss the complaint
pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state
a claim. For the reasons set forth below, Defendants'
motion is granted.

## Facts

The following facts are taken from the complaint and
assumed to be true for this motion to dismiss.

Plaintiff, an African–American male, was formerly
employed by DOE as a paraprofessional. (Compl.¶¶ 5,
17).

Defendant DOE is an agency of Defendant City; both are
organized under the laws of the State of New York. (Id.
¶¶ 6, 8).

Defendant Condon was Deputy Commissioner of the
New York City Department of Investigations and the
Special Commissioner of Investigation for the New
York City School District, and had broad investigative
authority as well as the responsibility to train investigators
under his charge. (Id. ¶ 7).

Defendant Walcott is the Chancellor of the DOE. (Id. ¶ 9).

Defendant Luft was the Principal of John F. Kennedy
High School, which is under the auspices of the DOE,
and was responsible for the hiring, firing, and discipline of
employees of the school. (Id. ¶ 10).

Defendants Condon, Walcott, and Luft are allegedly
policymakers for the DOE and the City. (Id. ¶¶ 7, 9–10).

Defendant Rose–Meyer is an investigator employed by
Defendant City; he conducted the investigation into
allegations of misconduct against Plaintiff. (Id. ¶ 11).

Plaintiff alleges that he performed the functions of his
position satisfactorily for several years. (Id. ¶ 13).

On November 8, 2010, a minor female student told her
guidance counselor that Plaintiff had been harassing her
and another student by asking the girls to spend time
with him away from school. (Id. ¶ 13). Plaintiff denied
the allegations. (Id. ¶ 15). The students' statements were
otherwise uncorroborated. (Id . ¶ 15).

During the investigation into the students' complaint, an
employee of the Defendants, who Plaintiff "believes" to
be Defendant Rose–Meyer said to Plaintiff:

"Since Obama became President, you people think you can get away with anything." (*Id.* ¶ 16).

During the investigation Plaintiff was only provided a "faded" and illegible copy of the witness statement against him. (*Id.* ¶ 17). He alleges that Defendants refused to interview two witnesses who could have exonerated him. (*Id.*).

**\*2** The students' allegations were credited over plaintiff's version of events and Plaintiff was fired. (*Id.*).

### Discussion

### I. Legal Standard for a Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003); *see also Roth v.. Jennings,* 489 F.3d 499, 510 (2d Cir.2007).

However, to survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *Iqbal,* 129 S.Ct. at 1950–51.

### II. Defendants' Motion to Dismiss is Granted

Plaintiff's complaint is no model of clarity. Plaintiff is represented by counsel, but I have received complaints from pro se plaintiffs that are more "professional." For example, the Complaint in multiple instances describes Plaintiff-a male-with female pronouns. It refers to a gender discrimination claim, although Plaintiff only advances a race discrimination claim. I can read it clearly enough, however, to ascertain that it should be dismissed.

### A. Framework for Plaintiffs Claims of Race Discrimination

Plaintiff claims Defendants deprived him of his right to equal protection under the law in violation of 42 U.S.C. §§ 1981, 1983, and the Fourteenth Amendment of the United States Constitution [1] by taking an adverse employment action against Plaintiff based on his membership in a racial and ethnic minority. [2]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (quoting U.S. Const. amend. XIV).

**\*3** Section 1981, enacted as part of the Civil Rights Act of 1866, provides that "All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "[Section] 1981 therefore bans racial discrimination with respect to employment ." *Guan N.,* 2013 WL 67604, at \*20 (citing *Patterson v. Cnty. Of Oneida,* 375 F.3d 206, 224 (2d Cir.2004)).

Section 1983 is not the source of any substantive rights, but "merely provides a method for vindicating federal rights elsewhere conferred such as those conferred by § 1981" or the Equal Protection Clause. *Patterson,* 375 F.3d at 225. In fact, " § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Id .* (quoting *Jett v. Dallas*

*Independent School District,* 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

To state a claim under 42 U.S.C. § 1983 against a defendant in her individual capacity a plaintiff must allege: (1) the defendant was acting under color of state law, and (2) the defendant's conduct deprived plaintiff of a constitutional or a federal statutory right. *Bermudez v. City of New York,* 783 F.Supp.2d 560, 576 (S.D.N.Y.2011) (citing *Washington v. County of Rockland,* 373 F.3d 310, 315 (2d Cir.2004). "[U]nder Section 1983 and Section 1981 supervisors can be sued individually, without directly participating in the underlying conduct, only if they promulgated unconstitutional policies or plans under which action occurred, or otherwise authorized or approved challenged misconduct. *Id.* at 602; *see also Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1066 (2d Cir.1989). When a defendant sued for discrimination under § 1983 is a municipality or an individual sued in his official capacity, the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom. *See Patterson v. County of Oneida,* 375 F.3d 206, 225–227 (2d Cir.2004) (citing *Jett,* 491 U.S. at 733–36, 109 S.Ct. 2702; *Monell v. Department of Social Services,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (internal citations omitted).

Claims of employment discrimination brought pursuant to § 1983, under either the constitution or § 1981 are analyzed under the *McDonnell Douglas* framework. *Bermudez,* 783 F.Supp.2d at 575 (citing *Boykin v. KeyCorp.,* 521 F.3d 202, 213 (2d Cir.2008)). Plaintiff must allege the following four elements: (1) he falls within a protected class, (2) he was performing his duties satisfactorily, (3) he was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *Id.* (citing *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir.2000)).

 **\*4** Although "an employment discrimination plaintiff need not plead a prima facie case of discrimination" in order to survive a motion to dismiss, *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), Plaintiff must allege sufficient facts showing that he is entitled to relief. *See, e.g., Alleyne v. American Airlines, Inc.,* 548 F.3d 219, 221 (2d Cir.2008); *Leibowitz v. Cornell University,* 445 F.3d 586, 591 (2d Cir.2006).

Additionally, "Section 1981 claims, [and] those under the Equal Protection Clause, must be based on intentional conduct." *Olivera v. Town of Woodbury,* 281 F.Supp.2d 674, 684 (S.D.N.Y.2003) (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania United Engineers & Constructors, Inc.,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)). "That is, the plaintiff must allege that the defendant acted 'because of a protected characteristic (e.g., race or ethnicity), and must plead sufficient factual matter to 'nudge [her] claims of invidious discrimination across the line from conceivable to plausible.' " *Guan N.,* 2013 WL 67604, at \*16 (quoting *Iqbal,* 556 U.S. at 677, 680) (alteration in original).

### A. Plaintiff Fails to Allege Defendants Condon, Walcott, and Luft Were Personally Involved

Defendants argue that Plaintiff has not alleged that Defendants Condon, Walcott, or Luft were personally involved in any alleged discrimination. Defendants are correct.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted). Additionally, to be liable under section 1983, a defendant must personally participate with "knowledge of the facts that rendered the conduct illegal." *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir.2001).

Here, Plaintiff does not allege any facts that show that Condon, Walcott, or Luft were involved or had knowledge of any of the alleged discriminatory acts. Plaintiff conclusorily alleges that Condon, Walcott, and Luft were involved in the discriminatory action by virtue of their positions as "policymakers" for the DOE and City; however, this is insufficient to state a plausible claim against them. As discussed above, supervisors who did not directly participate in the challenged conduct can be sued individually only if they promulgated unconstitutional policies or plans under which action occurred, or otherwise authorized or approved challenged misconduct. *See e.g., Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1066 (2d Cir.1989). Plaintiff points to no policy or plan of the City or DOE that is unconstitutional. ==Conclusory allegations that there was such a policy== or custom, without identifying or alleging supporting facts,

is insufficient to state a claim. *See e.g., Costello v. City of Burlington,* 632 F.3d 41, 49 (2d Cir.2011); *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

**\*5** The one alleged act evidencing racial discrimination is the comment allegedly made by Rose–Meyer to Plaintiff about "you people ." Plaintiff alleges no facts which indicate Condon, Walcott, or Luft were even aware of the challenged discriminatory act, let alone promulgated a discriminatory policy or approved of any discriminatory conduct.

Plaintiff alleges that Luft made employment decisions for a high school where Plaintiff presumably worked (nowhere in the Complaint does Plaintiff actually allege he worked at Luft's school), but he does not connect her in any way to the discriminatory statement allegedly made by Rose–Meyer. Plaintiff does not allege that Luft was aware of Rose–Meyer's discriminatory statement, nor does he plead any facts which would lead to an inference Luft fired him for discriminatory reasons (even assuming that it was Luft who fired Plaintiff, which is not plead in the Complaint). In fact, Plaintiff states in his Complaint he was terminated because the allegations of the students were credited over his version of the events. It is not race discrimination to credit one witness over another unless the reason for not believing the discredited witness is his race. No such allegation appears in the complaint.

Plaintiff's claims against Condon, Walcott, and Luft are dismissed.

**A. Plaintiff's Claim Against Rose–Meyer Is Dismissed**
Defendants argue that Plaintiff has even failed to state a plausible claim against Defendant Rose–Meyer.

In his Complaint, Plaintiff alleges he is African–American, did his job satisfactorily with no incidents for five years, and was terminated. Plaintiff alleges his termination followed an investigation during which the investigator told him, "Since Obama became President, you people think you can get away with anything." The investigation also had alleged defects: Plaintiff was only provided an illegible statement of the allegations against him, and there was no interview of any witnesses aside from the two students who made the accusation.

This is insufficient to state a claim against Rose–Meyer. Plaintiff alleges that Rose–Meyer conducted the investigation and made a discriminatory statement. However, Plaintiff does not allege Rose–Meyer was the person who made the decision to terminate him, nor does he allege any facts which connect the remark attributed to Rose–Meyer to Plaintiff's termination.

Plaintiff's claims against Rose–Meyer are dismissed.

**B. Plaintiff Fails to State a Claim Against the City or the DOE** Defendants argue that Plaintiff's claims fail as against the City and the DOE because Plaintiff fails to allege facts which make it plausible that the City or the DOE are liable under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants are correct. Claims brought under § 1983 against a municipality require the plaintiff "to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida,* 375 F.3d 206, 226 (2d Cir.2004) (citing *Monell,* 436 U .S. at 692–94). The same standard applies to claims brought against individuals sued in their official capacity. *Id.* (citing *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

**\*6** In order for Plaintiff to state a claim against the City or the DOE Plaintiff must allege that the discriminatory action was performed pursuant to a municipal policy or custom. However, conclusorily alleging that there was a policy or custom, without alleging supporting facts is insufficient. *Costello v. City of Burlington,* 632 F.3d 41, 49 (2d Cir.2011); *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517(1993).

Here Plaintiff alleges no facts that any of the alleged discriminatory action was pursuant to an official policy or custom. Plaintiff simply conclusorily states that the City and DOE have a policy or custom of discriminating against African–Americans. This is insufficient. Plaintiff's claims against the City and DOE are dismissed.

**Conclusion**

Defendants' motion to dismiss the Complaint is granted. Plaintiff's complaint is dismissed in its entirety.

The Clerk of Court is respectfully directed to remove the motion at docket number 12 from the Court's list of active motions.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6667681

Footnotes

1    Plaintiff's complaint also states that Plaintiff was denied equal protection in violation of the Fifth Amendment. Although the Fifth Amendment's Due Process Clause has an equal protection component that applies to the Federal Government, *see e.g., Boiling v. Sharpe,* 347 U.S. 497 (1954), it does not appear the Fifth Amendment has any applicability to this case.

2    Plaintiff's complaint also references a hostile work environment claim; however, Plaintiff concedes in his Memorandum of Law that he has not pleaded sufficient facts to support a hostile work environment claim and he withdraws this claim. (Pl.'s MOL at 10).

**End of Document**                                            © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4098611
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Willie Morris, Plaintiff,
v.
Jason Martin, Jason Seward, David
Soares, Steve Korkoff, City of Albany,
and County of Albany, Defendants.

5:16-CV-601 (NAM/TWD)
|
Signed 07/28/2016

**Attorneys and Law Firms**

WILLIE MORRIS, 14-A-0894, Auburn Correctional
Facility, P.O. Box 618, Auburn, New York 13021,
Plaintiff, pro se.

**MEMORANDUM-DECISION AND ORDER**

Norman A. Mordue, Senior U.S. District Judge

**\*1** Upon initial review, United States Magistrate Judge
Thérèse Wiley Dancks has prepared an Order and
Report and Recommendation (Dkt. No. 4) granting
plaintiff's application for *in forma pauperis* status and
recommending as follows:

- that the complaint (Dkt. No. 1) be dismissed without
  prejudice and with leave to amend against defendants
  City of Albany and Albany County;

- that the complaint be dismissed as against defendant
  District Attorney Soares, and that the dismissal be
  with prejudice on absolute immunity grounds, except
  as to plaintiff's claims that Soares created practices
  and policies that Martin and Soares used to pursue
  and falsely charge plaintiff and that Soares failed
  to supervise and discipline the agents he used to
  investigate criminal charges against plaintiff, and that
  as to those claims the dismissal be without prejudice
  and with leave to amend;

- that the action be allowed to proceed against
  defendants Martin, Seward, and Korkoff, and that
  these defendants, or their counsel, be required to file

a response as provided for in Rule 12 of the Federal
Rules of Civil Procedure; and

- that plaintiff be instructed that any amended
  complaint must be a complete pleading that
  supersedes his original complaint in all respects (and
  does not incorporate by reference any portion of
  his original complaint); and that he not attempt to
  reassert any claims that have been dismissed with
  prejudice.

Plaintiff has not objected to Magistrate Judge Dancks's
Report and Recommendation. Rather, he has filed a letter
motion dated July 6, 2016 (Dkt. No. 5) requesting that
he be given until August 5, 2016 to file an amended
complaint.

Upon review of the Report and Recommendation, the
Court finds no error. The Court accepts the Report and
Recommendation in its entirety. Due to the passage of
time since plaintiff requested an extension of time to file
his amended complaint, the Court extends his time to do
so until August 22, 2016. It is therefore

ORDERED that the Report and Recommendation (Dkt.
No. 4) is accepted; and it is further

ORDERED that the complaint (Dkt. No. 1) is dismissed
without prejudice and with leave to amend against
defendants City of Albany and Albany County; and it is
further

ORDERED that the Court dismisses with prejudice, on
grounds of absolute immunity, all claims against District
Attorney Soares, except for the following claims, which
the Court dismisses without prejudice and with leave
to amend: (1) the claims that District Attorney Soares
created practices and policies that he and Jason Martin
used to pursue and falsely charge defendant; and (2) the
claims that Soares failed to supervise and discipline the
agents he used to investigate criminal charges against
plaintiff; and it is further

ORDERED that the action shall proceed against
defendants Jason Martin, Jason Seward, and Steve
Korkoff; and these defendants, or their counsel, shall file
a response in accordance with Fed. R. Civ. P. 12; and it
is further

**\*2** ORDERED that any amended complaint must be a complete pleading that supersedes the original complaint in all respects (and does not incorporate by reference any portion of his original complaint); and that plaintiff shall not reassert any claims that have been dismissed with prejudice; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2016 WL 4098611

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1541044
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Steven O. ROBINSON, Plaintiff,

v.

Police Officer Douglas ROME, District Attorney
Richard A. Brown, Sergeant Patrick Cain, Assistant
District Attorney Gretchen Robinson, Police Officer
Chris Delasandro, Assistant District Attorney
Christine Oliveri, Raymond W. Kelly, Mayor Michael
R. Bloomberg, and Betsy Gotbaum, Defendants.

No. 11–CV–1411 (NGG)(LB).
|
April 20, 2011.

**Attorneys and Law Firms**

Steven Robinson, Wallkill, NY, pro se.

**MEMORANDUM & ORDER**

NICHOLAS G. GARAUFIS, District Judge.

 **\*1** Plaintiff pro se Steven O. Robinson ("Robinson"),
currently incarcerated at Wallkill Correctional Facility,
brings this civil rights action pursuant to 42 U.S.C.
§ 1983. (Compl. (Docket Entry # 1).) Robinson's
request to proceed in forma pauperis pursuant to 28
U.S.C. § 1915 is granted. For the reasons stated below,
Robinson's claims against Mayor Michael R. Bloomberg,
Police Commissioner Raymond W. Kelly, former Public
Advocate Betsy Gotbaum, District Attorney Richard
A. Brown, and Assistant District Attorneys Gretchen
Robinson and Christine Oliveri ("the ADAs") are
dismissed. Robinson's remaining claims against Sgt.
Patrick Cain and Police Officers ("POs") Douglas Rome
and Chris Delasandro may proceed. [1]

**I. BACKGROUND**

Robinson alleges that, on April 24, 2008, he was arrested,
without probable cause, by Defendants PO Rome and
Sgt. Cain, who used excessive force against him, failed
to allow him to seek treatment for his injuries, and
unnecessarily kept him handcuffed behind his back at the

police precinct. (Compl.¶¶ 1–13, 16–17, 49–56, 82–83.) PO
Rome later stated, in a criminal complaint and in front
of the grand jury, that he had found a gun on Robinson's
person while arresting him and had seen Robinson discard
a bag, in which a second gun was found. (Id. ¶¶ 14–15, 18,
20–23.) Robinson alleges that PO Rome's statement that
he had seen Robinson discard the bag was false, and that,
by making such a false statement in the criminal complaint
and to the grand jury, PO Rome violated Robinson's right
to due process. (Id. ¶¶ 67, 74.)

Robinson alleges that Defendant PO Delasandro, who
prepared paperwork relating to the arrest and who was
present at the scene of the arrest, wrote down his initials
on evidence recovered at the scene even though he
had not actually found the items. (Id. ¶¶ 30–32, 57–58,
60.) Robinson alleges that this constituted "deliberate
indifference" to Robinson's due process rights. (Id . ¶
58.) PO Delasandro also observed a group of "teenagers"
at the scene who, Robinson implies, may have actually
possessed the bag containing the gun. (Id. ¶ 42.) Robinson
alleges that PO Delasandro violated Robinson's due
process rights by failing to investigate those teenagers. (Id.
¶ 65.)

The two guns the police found at the scene of Robinson's
arrest were never tested for DNA or fingerprints. (Id.
¶¶ 19, 36–39.) Robinson alleges that the failure to
conduct such tests was attributable to a New York Police
Department ("NYPD") policy under which such tests
are not carried out where an officer actually sees the
gun in question on the suspect's person. (Id. ¶¶ 27–29.)
According to Robinson, POs Rome and Delasandro and
Sgt. Cain violated his due process rights when they failed
to test the guns for fingerprints or DNA, as per the
NYPD policy. (Id. ¶¶ 59–61.) Robinson alleges that Police
Commissioner Raymond Kelly violated his due process
rights by "issuing, enforcing or not knowing of" this
policy, and that former public advocate Betsy Gotbaum
and Mayor Michael Bloomberg violated his due process
rights because they "kn[ew] or should have known" of the
policy. (Id. ¶¶ 62–64.)

 **\*2** Robinson also alleges that ADAs Robinson and
Oliveri violated his due process rights by failing to
sufficiently investigate his case; failing to preserve
evidence; relying on false evidence; failing to disclose
exculpatory evidence at the grand jury and at trial; and
making an improper summation. (Id. ¶¶ 44–47, 66, 68–

77, 81.) Robinson also alleges that District Attorney Richard A. Brown violated Robinson's due process rights by failing to properly supervise or train ADAs in his office with respect to proper investigation, the preservation of evidence, and the disclosure of exculpatory evidence. (*Id.* ¶¶ 78–80.)

According to Robinson, he was acquitted of all charges relating to the gun found in the bag, but convicted of two "lesser charges on the other weapon discovered." (*Id.* ¶ 48.)

## II. STANDARD OF REVIEW

The court is mindful that, because Robinson is proceeding pro se, his Complaint should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *see also Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). Under 28 U.S.C. § 1915A, a district court, before requiring any response from defendants, "shall" dismiss the complaint sua sponte "if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

## III. DISCUSSION

### A. Claims Against POs Rome and Delasandro and Sgt. Cain

The court finds that Robinson has adequately stated claims against POs Rome and Delasandro and Sgt. Cain. Robinson has stated a claim that PO Rome and Sgt. Cain violated his constitutional rights under the Fourth and Fourteenth Amendments by using excessive force against him. *See Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir.2010) ("The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest.") (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *see also Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (finding the Fourth Amendment enforceable against the States through the Due Process Clause of the Fourteenth Amendment). Robinson has also stated a claim that POs Rome and Delasandro and Sgt. Cain violated his constitutional rights under the Fourth

and Fourteenth Amendments by arresting him without probable cause and/or participating in or supervising that arrest. [2] *See Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006) ("[The] Fourth Amendment right to remain free from unreasonable seizures ... includes the right to remain free from arrest absent probable cause."). And Robison has stated a claim that PO Rome violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments by fabricating evidence that resulted in the deprivation of Robinson's liberty. *See Zahrey v. Coffey,* 221 F.3d 342, 348 (2d Cir.2000) (describing constitutional right, sounding under common-law cause of action for malicious prosecution, "not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity"); *Rohman v. N.Y.C. Transit Auth.,* 215 F.3d 208, 215 (2000) ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty."); *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir.1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial[.]").

### B. Claims Against Commissioner Kelly, Former Public Advocate Gotbaum, and Mayor Bloomberg

**\*3** Robinson alleges that the NYPD has a policy of not testing guns for DNA or fingerprints where a police officer has observed the gun on the suspect's person. It is apparent that such a policy, assuming it in fact exists, is not, in itself, unconstitutional. The NYPD is entitled to allocate its resources as it sees fit and is not required to run further tests in order to determine the ownership of a gun where a police officer knows first-hand that the gun was on the suspect's person. *See Arizona v. Youngblood,* 488 U.S. 51, 58–59, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (concluding that "the police do not have a constitutional duty to perform any particular tests," even where the prosecution relies solely on police observation of the events in question). Because Robinson has not adequately stated a claim that the alleged policy is unconstitutional, he cannot proceed with claims against Commissioner Raymond Kelly, former Public Advocate Betsy Gotbaum, or Mayor Michael Bloomberg for promulgating, knowing of, or constructively knowing of such a policy.

### C. Claims Against the ADAs

Robinson alleges that ADAs Robinson and Oliveri violated his due process rights by failing to sufficiently investigate his case, failing to preserve evidence, relying on false evidence, failing to disclose exculpatory evidence, and making an improper summation. Prosecutors are absolutely immune from suit to the extent that their conduct is "prosecutorial"—as opposed to "investigative"—in nature. *See Zahrey,* 221 F.3d at 346 ("The nature of a prosecutor's immunity depends on the capacity in which the prosecutor acts at the time of the alleged misconduct. Actions taken as an advocate enjoy absolute immunity, while actions taken as an investigator enjoy only qualified immunity") (internal citations omitted). The conduct Robinson alleges as to the ADAs was clearly "prosecutorial," and thus Robinson's claims against ADAs Robinson and Oliveri must be dismissed. *See Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (granting prosecutors absolute immunity for their conduct "in initiating a prosecution and in presenting the State's case"). Such immunity covers the ADAs' alleged failure to sufficiently investigate Robinson's case. *See Crews v. County of Nassau,* No. 06–CV–2610 (JFB), 2007 WL 4591325, at *14 (E.D.N.Y. Dec.27, 2007); *see also Broam v. Bogan,* 320 F.3d 1023, 1029 (9th Cir.2003) ("A prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges.").

### D. Claims Against District Attorney Brown

Finally, Robinson alleges that District Attorney Richard Brown violated Robinson's right to due process by failing to properly supervise or train prosecutors with respect to investigation, evidence preservation, and the disclosure of exculpatory evidence.

In general, it is possible for a § 1983 plaintiff to hold a district attorney liable, under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for constitutional violations committed by subordinate prosecutors. Such liability may be based on the district attorney's failure to train his employees. As the Supreme Court stated in *Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, —— L.Ed.2d —— (2011), "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights

may rise to the level of an official government policy for purposes of § 1983." *Id.* at 1359. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* To prevail on a failure-to-train theory, the plaintiff must show that the failure amounted to the policymaker's ' "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (quoting *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Ordinarily, to prevail on such a theory, the plaintiff must prove "a pattern of similar constitutional violations by untrained employees." *Id.* at 1360.

**\*4** Hypothetically, and "in a narrow range of circumstances," a plaintiff could prove a policymaker's liability based on a "single incident," where constitutional violations of the kind to which the plaintiff was subjected were the "highly predictable consequence" of the failure to train. *Id.* at 1361 (citing *Canton,* 489 U.S. at 390 n. 10). The *Connick* Court concluded, however, that there can be no such liability in the context of prosecutors' failures to turn over material exculpatory material to the defense, as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Id.* at 1361–64. The Court emphasized the training regime that all lawyers, including prosecutors, undergo—in law school and through required continuing legal education —such that they are presumptively able to "apply legal principles, understand constitutional limits, and exercise legal judgment." *Id.* In light of that training, as well as the ethical obligations required of lawyers, *Brady* violations committed by prosecutors, the Court held, are not the "obvious consequence" of a district attorney's failure to provide additional training. *Id.*

Because Robinson has not alleged a "pattern" of similar violations, the Court's holding in *Connick* directly invalidates his claim that District Attorney Brown should be held liable for failing to train the ADAs as to their responsibilities to turn over exculpatory evidence under *Brady. Connick* 's holding also applies to Robinson's claim that Brown should be held liable for failing to train ADAs to properly investigate cases—a claim that can be read expansively to allege that, due to lack of training, ADAs under Brown's supervision went forward with prosecutions even though they knew, or should have known, that probable cause was lacking. Without proving a pattern of such violations, Robinson cannot

prove that the alleged violation in his case was the "obvious consequence" of such lack of training, given that prosecutors can be expected to know, without additional training, that prosecutions should only be brought when sufficient evidence of guilt exists. Finally, *Connick* 's holding applies to Robinson's claim that Brown should be held liable for failing to train ADAs to properly preserve evidence. Indeed, *Connick* 's holding is strongest in this context, since a plaintiff must show bad faith on the part of the individual law enforcement official to state a constitutional claim based on the official's failure to preserve evidence. *See Youngblood,* 488 U.S. at 57–58. Clearly, even in the absence of additional training, it would not be "highly predictable" that prosecutors would act in bad faith in failing to preserve evidence.

Therefore, Robinson's claims against District Attorney Richard Brown are dismissed.

### IV. CONCLUSION

For the reasons stated above, Robinson's claims against Mayor Michael Bloomberg, Police Commissioner Raymond Kelly, former Public Advocate Betsy Gotbaum, District Attorney Richard Brown, and ADAs Gretchen

Robinson and Christine Oliveri are DISMISSED. No summonses shall issue as to these Defendants. Robinson's claims against POs Douglas Rome and Chris Delasandro and Sgt. Patrick Cain may proceed as consistent with this opinion.

 **\*5** The United States Marshals Service is directed to serve summonses, Robinson's Complaint, and this Order upon POs Douglas Rome and Chris Delasandro and Sgt. Patrick Cain, without prepayment of fees. A courtesy copy of the same papers shall be mailed to Corporation Counsel of the City of New York. The case is referred to Magistrate Judge Lois Bloom for pretrial supervision. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States,* 269 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1541044

---

Footnotes

1   According to Robinson, PO Rome worked at the 101st Precinct in Queens, New York, until he was suspended, and his shield number is 31085; PO Delasandro works at the 101st Precinct and his shield number is unknown to Robinson; Sgt. Cain works at the 101st Precinct and his shield number is 1702. (Compl. at 3.)

2   Robinson's claims against PO Delasandro focus on two things. First, Robinson notes PO Delasandro's initialing of evidence he had not actually found. Such conduct simply does not independently violate any constitutional rights. Second, Robinson claims that PO Delasandro failed to investigate a group of teenagers he saw near the scene of Robinson's arrest. Such failure to investigate is also not an independent constitutional violation. A police officer's failure to pursue a particular investigative path is not a constitutional violation to the extent probable cause to arrest independently exists. *Stokes v. City of N.Y.,* No. 05–CV–007 (JFB), 2007 WL 1300983, at \*6 (E.D.N.Y. May 3, 2007) ("[I]t is well-settled that there is no independent claim for a police officer's purported failure to investigate."). To the extent that probable cause did *not* exist, this forms the basis for the separate claim of arrest without probable cause. Though the complaint is not precise on this point, the court finds that it can be read to allege that PO Delasandro was responsible, along with PO Rome and Sgt. Cain, for Robinson's arrest without probable cause. *See McEachin,* 357 F.3d at 200 (the Second Circuit has "frequently reiterated that *sua sponte* dismissal of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored") (internal alterations and quotation marks omitted).

---

**End of Document**                                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2017 Thomson Reuters. No claim to original U.S. Government Works.  4