UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────────

WILLIE MORRIS,

                Plaintiff,

                v.                                5:16-cv-601 (NAM/TWD)

JASON MARTIN, Police Officer,

JASON SEWARD, Police Officer,

STEVE KROKOFF, Chief of Police,

and CITY OF ALBANY,

                Defendants.

─────────────────────────────────────────────

**APPEARANCES:**

Willie Morris (14-A-0894)
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953
Plaintiff, *pro se*

Abigail W. Rehfuss, Esq.
The Rehfuss Law Firm, P.C.
40 British American Boulevard
Latham, New York 12110
*Attorney for Defendants*

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

                **MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Willie Morris, acting *pro se*, brings this action under 42 U.S.C. § 1983 asserting causes of action for false arrest, malicious prosecution, and related claims. (Dkt. No. 13-1).

Now before the Court is Defendants' motion for summary judgment. (Dkt. No. 69). Plaintiff opposes the motion, (Dkt. Nos. 78–79), and Defendants have filed a reply (Dkt. No. 80). Defendants' motion is granted in part and denied in part, for the reasons that follow.

## II. BACKGROUND[1]

In the early morning hours of August 9, 2012, Defendant Jason Martin, an officer with the Albany Police Department, stopped Plaintiff's vehicle at the intersection of Elk Street and Lark Street in the City of Albany. (Dkt. No. 69-12, ¶ 1). According to Officer Martin's arrest report, Plaintiff failed to signal in violation of Section 1163 of the Vehicle and Traffic Law ("VTL"). (Dkt. No. 69-3). Plaintiff denies that he committed any such infraction and claims that there was no probable cause for the stop. (Dkt. No. 78, pp. 4, 15). According to Officer Martin, Plaintiff appeared to be intoxicated and was discovered to be hiding an open bottle of champagne by his seat. (Dkt. No. 69-2, p. 5). Plaintiff denies that he was intoxicated or under the influence of drugs. (Dkt. No. 78, p. 4).

Officer Martin called for back-up, and Officer Kuhn arrived on the scene. (Dkt. No. 69-12, ¶ 4). According to Officer Martin, he asked for Plaintiff to exit the vehicle, and Plaintiff refused to get out and instead fled at a high rate of speed until crashing his car into a building.

---

[1] WHILE THE COURT "IS NOT REQUIRED TO CONSIDER WHAT THE PARTIES FAIL TO POINT OUT," IN DEFERENCE TO PLAINTIFF'S *PRO SE* STATUS AND OUT OF AN ABUNDANCE OF CAUTION, THE COURT HAS CONDUCTED "AN ASSIDUOUS REVIEW OF THE RECORD" TO DETERMINE WHETHER THERE IS EVIDENCE THAT MIGHT SUPPORT ANY OF PLAINTIFF'S CLAIMS. *HOLTZ V. ROCKEFELLER & CO.*, 258 F.3D 62, 73 (2D CIR. 2001). THEREFORE, THE FOLLOWING FACTS ARE LARGELY TAKEN FROM DEFENDANTS' STATEMENT OF FACTS AND SUPPORTING EVIDENCE, AND THE EVIDENCE SUBMITTED BY PLAINTIFF, TO THE EXTENT IT IS IN ADMISSIBLE FORM.

(Dkt. No. 69-2, p. 5; Dkt. No. 69-3). Plaintiff states that he fled for his life when Officer Martin tried to open the car door and took out his weapon. (Dkt. No. 78, pp. 8, 17). As Plaintiff took off in his vehicle, Officers Martin and Kuhn ran back to their patrol cars and pursued Plaintiff. (Dkt. No. 69-12, ¶ 6).

According to Officer Martin, when he arrived at the scene of Plaintiff's crashed vehicle, he observed Plaintiff outside the passenger side door discarding two plastic bags from his pockets before fleeing on foot. (Dkt. No. 69-2, p. 5). Plaintiff denies that he possessed or discarded any drugs. (Dkt. No. 78, p. 17). As Plaintiff fled on foot, Officer Martin reported the situation via radio and more officers came to the scene. (Dkt. No. 69-12, ¶ 9). A blood trail led the police to a residence, where Plaintiff was found on the roof. (Dkt. Nos. 69-6, 69-7). According to a sworn statement from the owner of the residence, Plaintiff had no authorization to be in her house or on her roof. (Dkt. No. 69-5). Upon his arrest, Plaintiff was taken to the hospital to receive treatment for his injuries sustained in the crash. (Dkt. No. 69-12, ¶ 13). There is no evidence that Defendant Chief Krokoff was ever at the scene of Plaintiff's arrest.

Meanwhile, several officers, including Defendant Seward, conducted a search of the immediate area where Plaintiff's vehicle had crashed. (Dkt. No. 69-12, ¶ 15). According to the officers, they discovered on the ground two small plastic bags containing crack cocaine, one of which was located directly next to the vehicle and the other nearby. (Dkt. No. 69-2, pp. 1–5). Plaintiff claims that any drugs found in the area did not belong to him. (Dkt. No. 78, p. 18). Plaintiff alleges that the Officers "acted upon an opportunity to set Plaintiff up with more serious Class B felonies, especially after discovering a load of drugs which literally fell into their laps." (*Id.*, p. 30).

The recovered crack cocaine was field-tested by Officer Seward, with positive results. (Dkt. No. 69-11). According to the arrest report, based on Officer Martin's observations and the location where the drugs were found, Plaintiff was charged with Criminal Possession of a Narcotic Drug with Intent to Sell; Criminal Possession of a Controlled Substance; Criminal Trespass in the Second Degree; and VTL violations. (Dkt. No. 69-3). Officer Martin completed a criminal complaint form accusing Plaintiff of Criminal Possession of a Controlled Substance in the Third Degree. (Dkt. No. 69-8).

Plaintiff was arraigned on the charges on August 9, 2012. (Dkt. No. 69-12, ¶ 18). Plaintiff was later indicted on February 1, 2013 for Criminal Possession of a Controlled Substance in the Third Degree. (Dkt. No. 69-9). Plaintiff claims that the Officers fabricated the felony complaint and gave false testimony against him at trial. (Dkt. Nos. 13-1, 78-1). On or about October 2, 2013, Plaintiff was acquitted of the drug charge. (Dkt. No. 13-1, p. 51). Plaintiff claims that "dash camera" video footage of the incident "totally exonerated him of the attributed false charges." (*Id.*, p. 29). Plaintiff alleges that the Defendant officers conspired to arrest and prosecute him based on the planted evidence, that Chief Krokoff knew about it and did nothing, and that the City of Albany had a custom or policy which caused such conduct. (*See generally* Dkt. No. 13-1, Dkt. No. 78).

**III.    STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim") (internal quotation marks omitted).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing . . . a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.

2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (alterations in original) (internal quotation marks and citations omitted)).

## IV. DISCUSSION

As explained in the Court's Memorandum-Decision & Order dated June 29, 2017, Plaintiff's remaining claims in this case are as follows: (1) false arrest under the Fourth Amendment against Officers Martin and Seward based on their alleged conduct in planting drugs near his vehicle on August 9, 2012; (2) failure to intervene against Chief Krokoff, who allegedly knew about the planted evidence but did nothing; (3) malicious prosecution against Officers Martin and Seward; (4) deprivation of a fair trial against Officers Martin and Seward; (5) conspiracy against Officers Martin and Seward; and (6) a related municipal liability claim against the City pursuant to *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658 (1978). (Dkt. No. 45, p. 7). Defendants argue that all of Plaintiff's claims must be dismissed because they are barred by the statute of limitations, and alternatively, they fail on the merits.

### A. Statute of Limitations

Recovery under Section 1983 "is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law." *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985). The limitations period for a Section 1983 action in New York State is three years from accrual. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Federal law determines when a Section 1983 cause of action accrues. *See id.* at 80. Ordinarily, the cause of action arises when the plaintiff knew or had reason to know of his injury. *See Keating v. Carey*, 706 F.3d 377, 382 (2d Cir. 1983).

In some cases, late-filed claims may nonetheless proceed based on equitable tolling, which applies in rare and exceptional circumstances in which "a plaintiff has been prevented in some extraordinary way from exercising his rights." *Pearl*, 296 F.3d at 85 (internal quotation marks omitted). "One such exceptional circumstance occurs when the plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003). In determining whether equitable tolling is warranted, a court must consider whether the plaintiff: "(1) has acted with reasonable diligence during the time period [he] seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* at 80–81 (internal quotation marks omitted).

Here, Plaintiff commenced this action on May 25, 2016, more than three years after his arrest on August 9, 2012. At the motion to dismiss stage, the Court found that equitable tolling could possibly save Plaintiff's claims because "assuming the truth of the allegations in the amended complaint, plaintiff would have known immediately that he was innocent of the drug

crime, because he had not possessed any drugs – but it may not have been possible for him to learn until later that defendants had planted the drugs themselves and that therefore they could not reasonably have believed he had committed a crime." (Dkt. No. 45, pp. 9–10). Therefore, this issue could not be resolved on the face of the complaint, without further development of the factual record.

Now the Defendants argue that "Plaintiff has not and cannot present any evidence, aside from his own self-serving statements, that equitable tolling should apply in this case, and that if it does, when the claims accrued." (Dkt. No. 69-11, p. 8). In response, Plaintiff contends that equitable tolling should apply based on "fraudulent concealment," or alternatively, that his claims should be subject to the six-year statute of limitations for fraud. (Dkt. No. 78-2, pp. 9–13). The latter argument bears little discussion, since Plaintiff does not have a cause of action for fraud. Rather, the question is when the three-year statute of limitations that is applicable to Plaintiff's claims began to run. For a false arrest claim, the clock starts on the date when the plaintiff knew or objectively had reason to know of the alleged violation. Ordinarily, this is the date he becomes held pursuant to legal process—in this case August 9, 2012 when Plaintiff was formally arraigned. In theory, Plaintiff could toll the start date if he showed that he did not learn of the alleged violation until a later time. But Plaintiff has not adduced any such evidence. Indeed, he appears to admit that the claim accrued "in August 2012 when the Defendants planted evidence around [and] by Plaintiff's car." (Dkt. No. 78-2, p. 10). Further, the arrest report shows that the basis for Plaintiff's "planted evidence" theory was available to him on August 9, 2012. (Dkt. No. 69-3). In other words, Plaintiff was or should have been aware of the nature of his claim at that time. There is no evidence of fraudulent concealment regarding any relevant facts that were later discovered to give Plaintiff notice of his claim. Therefore,

7

Plaintiff's false arrest claim accrued on August 9, 2012, and since more than three years passed before he filed the complaint, this cause of action is time-barred.[2] *See Martinez v. City of New York*, 476 F. Supp. 2d 330, 331 (S.D.N.Y. 2007) (finding false arrest claim time-barred where the plaintiff knew or had reason to know of the alleged false arrest on the date of the incident).

However, Plaintiff's malicious prosecution claim accrued later, on October 2, 2013, when he was acquitted on the drug charge. (Dkt. No. 13-1, p. 51). Therefore, this claim was filed within three years and is timely. *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994) ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor."); *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) (finding that a cause of action for malicious prosecution accrues "when the underlying criminal action is conclusively terminated"). The same is true for Plaintiff's remaining claims, since the alleged constitutional violations would have arguably continued until the acquittal. Therefore, the Court will turn to the merits of those claims.

---

[2] The same is true for Plaintiff's duplicative false imprisonment claim. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) (holding that the limitations period for false imprisonment begins to run when the victim is no longer falsely imprisoned—*i.e.,* he becomes held pursuant to legal process—and not when charges against him are dropped). Moreover, even if Plaintiff's false arrest claim was not time-barred, the undisputed facts show that, independent of the drug charge, there was probable cause to arrest for Criminal Trespass in the Second Degree. (*See* Dkt. No. 69-5).

## B. Malicious Prosecution

"To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). "To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Id.* The existence of probable cause "is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Moreover, "indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1251 (N.Y. 1983)).

Here, the only element of Plaintiff's claim in dispute is the existence of probable cause for the prosecution against him. Defendants argue that Plaintiff's claim must fail because he was formally indicted on the drug charge, which "established probable cause for the Plaintiff's continued prosecution for the drug possession." (Dkt. No. 69-11, p. 11). The record shows that Plaintiff was indicted by a grand jury on February 1, 2013 on the charge of Criminal Possession of a Controlled Substance in the Third Degree. (Dkt. No. 69-9). Consequently, there is a presumption of probable cause, which Plaintiff must rebut in order to survive summary judgment. Plaintiff argues that "the presumption has been overcome by bad faith such as fraud, perjury, falsification, misrepresentation, and withholding of evidence." (Dkt. No. 78-2, p. 25).

9

He alleges that Defendants planted the drugs next to his vehicle and then fabricated a felony complaint against him, thereby securing the indictment by means of deceit. As evidence, Plaintiff points to alleged inconsistencies in the various statements given by Officers regarding the incident, and the fact that he was acquitted at trial. Indeed, Plaintiff claims that "dash camera" video footage of the incident "totally exonerated him of the attributed false charges." (Dkt. No. 13-1, p. 29).

The Court has received and reviewed the dash camera video recordings related to Plaintiff's arrest. (*See* Dkt. Nos. 81, 83). They show several patrol cars (units) responding to the scene, and Unit 202 drives directly by Plaintiff's crashed vehicle. The dash camera video from Unit 202 appears to show a small white-colored object on the sidewalk next to the passenger door of Plaintiff's vehicle. But that object cannot be definitively identified as a plastic bag of crack cocaine, as reported by the officers. Nor does the video exonerate Plaintiff as he so claims. And the videos from the other units shed no light on the matter. Under the circumstances, the Court finds that there are genuine issues of material fact with respect to the probable cause for Plaintiff's prosecution. Therefore, Defendants' motion is denied as to Plaintiff's malicious prosecution claim. *See Groski v. City of Albany*, No. 12 Civ. 1300, 2014 WL 2532471, at *5, 2014 U.S. Dist. LEXIS 76458, at *13 (N.D.N.Y. June 5, 2014) ("However, even if a presumption of probable cause applied, the subsequent acquittal of plaintiffs on the disorderly conduct charges indicates that the facts ultimately adduced at trial did not sufficiently support a conviction on the charges brought against plaintiffs. Therefore, as to plaintiffs' claims, given the disputes between the parties as to the nature of the events leading to plaintiffs' arrest and prosecution, there are genuine issues of fact with respect to probable cause. In other words, the court cannot determine as a matter of law, based on this record, whether there was in

fact probable cause, and therefore defendants' motion for summary judgment on this basis is denied."); *Richardson v. City of New York*, No. 02 Civ. 3651, 2006 WL 2792768, at *7, 2006 U.S. Dist. LEXIS 69577, at *21 (E.D.N.Y. Sept. 27, 2006) (finding that presumption of probable cause is overcome "if it can be proved that a law-enforcement officer fabricated material evidence against a suspect and forwarded it to prosecutors").

### C. Deprivation of Fair Trial

Plaintiff also appears to assert a claim for deprivation of a fair trial against Officers Martin and Seward. "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). The elements of a claim for denial of the right to a fair trial are: "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti*, 124 F.3d at 130).

Curiously, Defendants' moving papers do not address Plaintiff's fair trial claim, except to ask that their motion be granted in its entirety, "including those claims based on deprivation of fair trial rights . . . in the event the Court dismisses the balance of the Complaint." (Dkt. No. 80, p. 6). That is not quite how things work on summary judgment, where the movant bears the burden to *show* that it is entitled to judgment as a matter of law. Here, Defendants do not identify any missing element or evidence for Plaintiff's fair trial claim, which is premised on the same theory as his claim for malicious prosecution. Moreover, the fact that Plaintiff was

acquitted does not necessarily preclude his fair trial claim. *See Maldonado v. City of New York*, No. 11 Civ. 3514, 2014 WL 787814, at *10, 2014 U.S. Dist. LEXIS 26239, at *31 (S.D.N.Y. Feb. 26, 2014) ("Even though the alleged fabrication did not result in [the plaintiff's] conviction, [the defendant officer] could be liable for any unjustified deprivation of [the plaintiff's] liberty before and during trial."). Therefore, the Court will not consider the merits of Plaintiff's fair trial claim, which may proceed at this time.[3]

### D. Conspiracy

"To prove a Section 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).

Defendants argue that Plaintiff's conspiracy claim must fail because there is no evidence "demonstrating the existence of any agreement between Officers Martin and Seward to conspire to plant drugs next to Plaintiff's vehicle." (Dkt. No. 69-11, p. 8). In response, Plaintiff claims that he "has sufficiently pleaded and can proffer substantiating evidence demonstrating the existence of an agreement between officers Seward and Martin to conspire to plant drugs next to his crashed vehicle [and] nearby." (Dkt. No. 78-2). However, Plaintiff has not provided any evidence to support his conspiracy claim. At this stage, Plaintiff's conclusory allegations are insufficient to survive summary judgment.

---

[3] To the extent Plaintiff's fair trial claim is based on allegedly perjured grand jury and trial testimony by Officers Martin and Seward, they are immune from such liability, even if they gave false testimony. *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012).

12

Accordingly, Plaintiff's conspiracy claim must be dismissed.[4] *See Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (holding that allegations by the plaintiff were insufficient to defeat the defendants' summary judgment motion in a Section 1983 conspiracy action where the "allegations are unsupported by any specifics, and many of them are flatly contradicted by the evidence proffered by defendants"); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1988) (reiterating that "conclusory allegations" or "unsubstantiated speculation" will not defeat summary judgment on a Section 1983 conspiracy claim); *Barnes v. Harling*, 368 F. Supp. 3d 573, 596 (W.D.N.Y. 2019) (granting summary judgment on the plaintiff's Section 1983 conspiracy claim where "[t]he record before the Court viewed in the light most favorable to Plaintiff sets forth no specific facts that support the conspiracy allegations"); *Myers v. County of Nassau*, 825 F. Supp. 2d 359, 368 (E.D.N.Y. 2011) ("Plaintiff's bare allegations of a scheme to fabricate evidence might be sufficient to defeat a motion to dismiss. Where, as here, however, a plaintiff is faced with a properly supported motion for summary judgment, he may not rest upon his pleadings. Instead, he must come forward with admissible evidence that would allow a reasonable jury to find in his favor.").

### E. Failure to Intervene

To establish a claim of failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene.

---

[4] Having found that Plaintiff's conspiracy claim is subject to dismissal, the Court need not address Defendants' argument that the claim is also precluded by the intra-corporate conspiracy doctrine, which has not yet been validated by the Second Circuit in the context of Section 1983 actions.

*Thomas v. City of Troy*, 293 F. Supp. 3d 282, 296 (N.D.N.Y. 2018).

Defendants argue that Plaintiff's failure to intervene claim should be dismissed because "Chief Krokoff was not present at the scene of the incident on August 9, 2012, and thus had no realistic opportunity to intervene to prevent any alleged constitutional violations." (Dkt. No. 69-11, p. 11). In response, Plaintiff argues that he "has a supervisory liability claim as opposed to simply a failure to intervene claim." (Dkt. No. 78-2, p. 21). Among other things, Plaintiff alleges that Chief Krokoff failed to intervene, train, discipline, and remedy the wrongs committed by Officers Martin and Seward after being informed of them. (*Id.*, p. 20).

However, there is no evidence that Chief Krokoff was at the scene of Plaintiff's arrest on August 9, 2012, or that he was involved in any events thereafter. Plaintiff has adduced evidence that he sent a letter and filed a complaint regarding the incident, (Dkt. No. 13-1, pp. 35–39, 43), but there is no indication that either was received by Chief Krokoff. And even if they were, Chief Krokoff had no reason to credit Plaintiff's allegations, absent further proof. The video recordings from the scene are inconclusive at best, as discussed above. In other words, there is no indication that Chief Krokoff knew or should have known that, pursuant to Plaintiff's theory, Officers Martin and Seward planted the drugs and fabricated a felony complaint against him. Therefore, Plaintiff has failed to raise a genuine issue of material fact that Chief Krokoff had an opportunity to intervene in the alleged violations.

To the extent Plaintiff has a supervisory liability claim against Chief Krokoff, it fails for the same reason. Under Section 1983, "a supervisor may not be held liable merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). As relevant here, Chief Krokoff may be liable as supervisor to Officers Martin and Seward if Plaintiff can show that Chief Krokoff, "after being informed of the violation through a report or

14

appeal, failed to remedy the wrong." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Again, there is no evidence that Chief Krokoff knew of a constitutional violation, much less that he failed to remedy it. Accordingly, Plaintiff's failure to intervene and/or supervisory liability claim against Chief Krokoff must be dismissed. The Court will discuss below Plaintiff's allegations that there was a failure to train and/or discipline Officers Seward and Martin.

### F. Municipal Liability

In general, a municipality may not be held liable under Section 1983 on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694–95. Rather, municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees. *See Monell*, 436 U.S. at 691. In order to sustain a claim for municipal liability under Section 1983, a plaintiff must show that he suffered a constitutional violation, and that the violation resulted from an identified municipal policy or custom. *Id.* at 694–95.

A municipal policy or custom may be demonstrated by any one of the following: (1) a formal policy, officially sanctioned by the municipality, *Monell*, 436 U.S. at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483–84; (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1985) (plurality opinion); or (4) a failure to train, supervise, or discipline that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

Here, most of Plaintiff's allegations fall under the fourth theory; he argues that "there are/were numerous specific, illegal and unconstitutional acts by the Police Officers/City Employees which can be traced to, or bear a direct nexus to lack of training, improper training, which implicate the existence of a policy or custom." (Dkt. No. 78-2, p. 28). Plaintiff claims that the City of Albany "was aware that individual Defendants and other members of the APD routinely committed similarly constitutional violations and crimes such as those at issue and has failed to change its policies, customs and practices to stop this behavior." (*Id.*, p. 37). Further, Plaintiff alleges that the City had a policy of targeting minorities for selective enforcement. (*Id.*, pp. 29–30).

Defendants argue that Plaintiff's *Monell* claim must fail because "Plaintiff is unable to prove that the City had a pattern or practice" related to the alleged constitutional violations. (Dkt. No. 69-11, p. 13). The Court agrees. Plaintiff's conclusory allegations as to a failure to train and/or discipline officers are unsupported by any relevant evidence. Likewise, Plaintiff has not provided any evidence to substantiate his claim that the City had a policy of selective police enforcement against minorities. At this stage, speculation and conjecture are not enough to show that a municipal policy or custom caused the alleged constitutional violations. Accordingly, Plaintiff's *Monell* claim must be dismissed. *See Nardoni v. City of New York*, 331 F. Supp. 3d 116, 119 (S.D.N.Y. 2018) (granting summary judgment on *Monell* claim because "Plaintiff points to no evidence in the record of a policy or custom by the City of New York"); *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 172 (E.D.N.Y. 2010) (finding that "conclusory allegation does not allow plaintiff's *Monell* claim to survive summary judgment").

I. **CONCLUSION**

For these reasons, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 69) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiff's Section 1983 claims for malicious prosecution and deprivation of a fair trial may proceed as against Defendants Martin and Seward; and it is further

**ORDERED** that Plaintiff's remaining claims are dismissed with prejudice; and it is further

**ORDERED** that Defendants Chief Krokoff and City of Albany are hereby dismissed from the case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date: October 23, 2019
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge